## MARKHAM *vs.* BROWN.

Where an innkeeper, in a town through which lines of stages pass, and at whose inn the stages stop, permits the drivers of some of the lines to resort to his house without objection; he cannot exclude the driver of a rival line from entering the inn, and going into the common public rooms, where travellers are usually placed, for the purpose of soliciting passengers for his coach; provided there is reasonable expectation that passengers are there, and he comes at a suitable time, conducts with propriety, and is doing no injury to the innkeeper.

But this right may be forfeited by misconduct—Thus, if affrays occur, or guests are disturbed through his fault, or he is guilty of other abuse; the innkeeper, if it appear to be necessary for the protection of his guests, or himself, may prohibit him from entering until the ground of apprehension be removed; and may treat him as a trespasser if he enter after such prohibition.

And if, after a lawful entry, he commit an assault upon the innkeeper, or any trespass upon his property, he may be treated as a trespasser *ab initio*.

If the drivers of other lines are guilty of misconduct towards the driver of such rival line, and he is engaged in an affray from self defence, that will not authorize the innkeeper to exclude him, except at the time of the disturbance, and for the purpose of restoring quiet to the house.

TRESPASS, for breaking and entering the plaintiff's house, in Hanover, being a common inn, and making a noise and disturbance therein, and assaulting and beating the plaintiff at sundry times between the first of July, 1835, and the date of the writ, which was October 8, 1835.

Plea, the general issue, with a brief statement that the defendant was the driver of a stage coach, and entered the plaintiff's house to enquire for passengers, and that the force, if any, was the plaintiff's own assault.

On trial, it appeared that the plaintiff kept an inn at Hanover, to which stage coaches brought their passengers from various quarters, and carried them away in different directions. The stage coaches which had come to the house previous to the time when defendant's line was started, in

April, 1835, put up there by contract with the plaintiff, and had their teams and drivers kept by him. Brown commenced running a stage coach, as driver and proprietor, in that month, from Hanover to Claremont, (which was in opposition to some of the lines previously running to the plaintiff's,) without any contract with the plaintiff, boarding himself and keeping his teams elsewhere, but leaving passengers at, and receiving them from, the plaintiff's hotel. Frequent altercations had happened between the defendant and the other drivers, in the plaintiff's house, until the plaintiff, who appeared to be in the interest of the other drivers, had forbidden him to come to his house. Afterwards, in October, 1835, the defendant went into a parlor in the plaintiff's house, in which some of his guests had been put who had recently arrived in other coaches, and an altercation ensued between the defendant and Philbrick, another driver, who had also gone there to solicit passengers, which ended in an affray and assault and battery. Evidence was offered by the plaintiff to show that Brown commenced the affray, but the defendant introduced evidence to show that Philbrick began it.

Upon this the plaintiff went in and ordered Brown to leave the house. There was evidence that the defendant refused to leave the room, claimed a right to be there, and to go into any part of the house where he chose, and that while plaintiff stooped to pick up a stick of wood, defendant seized and held him. Other witnesses stated that the plaintiff went into the room with a club, and that all the defendant did was to ward off the blow ; that he told the plaintiff if he would lay down the club he would go out, and did go as soon as the plaintiff desisted. There was no proof that any of the persons in the room which Brown entered had engaged a passage in Brown's coach, or desired him to come there. But he was conversing with a lady, to engage her as a passenger, at the time of the affray between him and Philbrick, and took three or four passengers from

the plaintiff's at that time. The court instructed the jury that in order to maintain his action the plaintiff must shew the defendant's entry into his house to have been unlawful:

That the defendant, being the driver of a stage coach, had a right to enter the plaintiff's inn, without his consent, and against his prohibition, and to go into the common rooms in the house where guests were put, who were likely to desire a passage in his coach, to solicit them to go with him, though not requested by such guests: That if Brown, by an abuse of this right, had previously caused disturbances in the house, and had in consequence been forbidden by the plaintiff to enter, his entry afterwards, for the purpose of obtaining passengers, would, notwithstanding, be lawful, though followed by other disturbances in the house caused by Brown, and that such disturbances would not make his entry unlawful from the beginning: That if, after Brown had entered the house for the purpose aforesaid, and after being forbidden as aforesaid, an assault and battery ensued between Brown and a third person, received as a guest into the plaintiff's house, and lawfully there, whether such assault and battery were caused by the fault of such third person, or of Brown, or of both, if not made on the plaintiff himself, this would not make the entry of Brown a trespass *ab initio*, but would authorize the plaintiff to turn both out of the house: That the only question for the jury was, whether Brown had committed an assault on the plaintiff not justified in self defence; and that if he had not, the plaintiff had failed to maintain his action.

The jury found a verdict for the defendant; and the plaintiff moved for a new trial.

*Perley*, for the plaintiff, contended,

1. That a tavern, or common inn, being for the entertainment of travellers only, the defendant had no right in the plaintiff's house.

It is clear on all the authorities, both old and recent, that

at common law, none but travellers have right in a common inn ; every right in an inn must be claimed by a traveller, seeking entertainment, and paying, or offering to pay a reasonable price for it ; or by some person who acts at the request, and under the direction of such a traveller, for a reasonable purpose. 3 *Barn. & Ald.* 283, *Thompson* vs. *Lacy ;* 1 *Hawk. P. C.* 452 ; 2 *Chitty's Pl.* 274 ; 3 *ditto* 384 ; *Story on Bailment* 310—312 ; *Evans' Pothier* 57.

And the rule of law, as established on all the authorities, is distinctly recognized by our statute as the limit and measure of the innkeeper's duty. He must provide suitable accommodation for travellers. 1 *N. H. Statutes* 482.

Our statute and the common law concur in limiting the duty of taverners to the entertainment of travellers who come in a condition and manner suitable to be received, and offer a reasonable price for the entertainment which they desire.

There is no new state of things calling for the introduction of a new rule.

There has always been a class of people who have an interest in soliciting employment from the guests at public houses ; such as hackney coachmen, chairmen, porters, and common carriers ; but the law has made no exception in their favor ; if they were called by a guest, the guest would probably have a right that such persons should attend him.

This business of stage coaches has been established in England for a century, and in this country for half the time —still the rule, both in this country and in England, down to the latest authorities, has been declared with all the ancient strictness.

2. If the custom of the plaintiff's house, and the general custom of such taverns gives a license, by implication, for all persons to enter, whether travellers or not, it is a license which may be revoked in a particular case, and it was so in this.

The defendant had abused the right before, and was

prohibited to enter. This would take away any right which he had before.

It would be unreasonable to require the landlord, after a man had abused his house, to let him in again, and take the chance of his future conduct. He might as well be obliged to admit a madman. It is the duty of the landlord to preserve order in his house. If he fail, he is liable to lose his license, to fine, and perhaps to imprisonment. The law, which put him under these liabilities and penalties, will certainly give him the means of enforcing the order which the law requires him to keep.

3. The defendant not coming in for the purpose of being entertained ; not paying or offering to pay any thing ; his entry, against the express prohibition of the plaintiff, is a trespass.

4. If he had a right to enter the house at all, he had none to go into private rooms without express license of the plaintiff—much less against his express prohibition.

The bar room is an office, where all orders are usually given, and where enquiries are made. If he could go into other rooms there would be no limit to his right.

5. If he must be understood to have entered lawfully, his subsequent tortious act made his entry a trespass *ab initio.*

Beating a guest received into the house would make him a trespasser *ab initio.*

If he had any authority, it was an authority in law, as he had been expressly and repeatedly forbidden to enter the house. *Six Carpenters case,* 8 *Coke* 146, *b* ; *Yelverton* 96, *Bagshaw* vs. *Gaward* ; 10 *Johns.* 369, *Hopkins* vs. *Hopkins* ; 13 *Mass.* 520, *Oystead* vs. *Shed & als* ; 20 *Johns.* 427, *Gates* vs. *Lounsbury* ; *Salk.* 221, *Gargrave* vs. *Smith* ; 2 *W. Bl.* 1218, *Reed* vs. *Harrison* ; 11 *East* 395, *Winterbourne* vs. *Morgan & al* ; 2 *Ld. Raym.* 1424, *Griffin* vs. *Scott & al* ; 5 *Taunt.* 198, *Aitkinhead* vs. *Blades & als* ; 12 *Johns.* 408, *Adams* vs. *Freeman.*

If one who enters under authority in law, use his entry

Markham
*vs.*
Brown.

to do an unlawful act, it is a legal inference that he entered for the unlawful purpose, which cannot be contradicted. 3 *N. H. R.* 210 ; 8 *Co. R.* 146.

6. Markham, after the disturbance had commenced, had a right to order Brown out ; and if he remained, disturbing the house, he would be a trespasser *ab initio.* 11 *East* 395 ; 2 *Ld. Raym.* 1428 ; 5 *Taunt.* 198 ; 12 *Johns.* 408 ; *Com. Dig., Trespass, C,* 2 ;

In trespass *quare clausum,* the rule which makes the entry of a party a trespass *ab initio* is not confined to such acts as amount to violence on the owner, or an abuse of the thing which he entered to take. *Perkins* § 191 ; 3 *N. H. R.* 227, *Barrett* vs. *White & al ; Bac. Ab., Trespass, B, and auth. before cited.*

*D. Blaisdell,* and *Bell, for the defendant.*

PARKER, J. An innkeeper holds out his house as a public place to which travellers may resort, and of course surrenders some of the rights which he would otherwise have over it. Holding it out as a place of accommodation for travellers, he cannot prohibit persons who come under that character, in a proper manner, and at suitable times, from entering, so long as he has the means of accommodation for them.

But he is not obliged to make his house a common receptacle for all comers, whatever may be their character or condition. He is not obliged to receive one who is not able to pay for his entertainment, (3 *Barn. & Ald.* 283, *Thompson* vs. *Lacy ;*) and there are considerations of greater importance than this. He is indictable if he usually harbor thieves, (1 *Hawk. Ch.* 78, *sect.* 1 ; *Bac. Ab., Inns, &c.*) and he is answerable for the safe keeping of the goods of his guests, (*Story on Bailment* 307,) and is not bound to admit one whose notorious character as a thief furnishes good

reason to suppose that he will purloin the goods of his guests, or his own.

So he is liable if his house is disorderly, (1 *Hawk.* 451) and cannot be held to wait until an affray is begun before he interpose, but may exclude common brawlers, and any one who comes with intent to commit an assault or make an affray.

So he may prohibit the entry of one whose misconduct in other particulars, or whose filthy condition, would subject his guests to annoyance.

He has a right to prohibit common drunkards and idle persons from entering, and to require them, and others before mentioned, to depart, if they have already entered.

And any person entering not for a lawful purpose, but to do an unlawful act—as to commit an assault upon one lawfully there—must be deemed a trespasser in entering for such unlawful purpose.

As he is bound to admit travellers, under certain limitations, he may likewise be held, under proper limitations, to admit those who have business with them as such. This may be considered as derived from the right of the traveller. It is conceded that he may be bound to permit the entry of persons who have been sent for by the guest. But we think the rule is not to be limited, in all cases, to this. There may be such connection between travellers and those engaged in their conveyance, that the latter, although not specially sent for, may have a right to enter a common inn; or such that the landlord, if he give a general license to some of those whose business is connected with his guests, in their characters as travellers, cannot lawfully exclude others, pursuing the same business, and who enter for a similar object.

There seems to be no good reason why the landlord should have the power to discriminate in such cases, and to say that one shall be admitted and another excluded, so

long as each has the same connection with his guests—the same lawful purpose—comes in a like suitable condition, and with as proper a demeanor ; any more than he has the right to admit one traveller and exclude another, merely because it is his pleasure.

If one comes to injure his house, or if his business operates directly as an injury, that may alter the case—but that has not been alleged here. And perhaps there may be cases in which he may have a right to exclude all but travellers and those who have been sent for by them. It is not necessary to settle that at this time.

In the present case it appeared that stage coaches brought their passengers to the plaintiff's inn from various quarters, and carried them away in different directions. It is understood that Hanover was not a place where the lines of stages or conveyances terminated, and where passengers were left to seek their own conveyance onward, as is often the case in the larger cities ; but that the line of stages extended through the place in such manner that travellers might reasonably expect conveyances onward would be tendered for their use.

The drivers of some of the coaches were accustomed to resort to the plaintiff's inn, and boarded there.

Under these circumstances, we see no objection to the first part of the charge to the jury. The defendant had clearly a right to establish a line of stage coaches, and to go to the plaintiff's inn with travellers, and he might of course lawfully enter it for the purpose of leaving their baggage and receiving his fare.

And we are of opinion that, so long as others were permitted to do the same, the defendant had an equal and lawful right, notwithstanding any prohibition by the plaintiff, to enter the plaintiff's inn for the purpose of tendering his coach for the use of travellers, and soliciting them to take passage with him ; and for that purpose to go into the common public rooms of the inn, where guests were usually

placed to await the departure of the stages, although he was not requested by such guests; provided there was a reasonable expectation that passengers might be there, and he came at a suitable time, in a proper manner, demeaned himself peaceably, and remained no longer than was necessary, and was doing no injury to the plaintiff.

But the jury should have been instructed that the defendant might forfeit this right by his misconduct, so that the plaintiff might require him to depart, and expel him; and if, by reason of several instances of misconduct, it appeared to be necessary for the protection of his guests or of himself, the plaintiff might prohibit the defendant from entering again, until the ground of apprehension was removed. Thus if affrays or quarrels were caused through his fault, or he was noisy, disturbing the guests in the house—interfered with its due regulation—intruded into the private rooms—remained longer than was necessary, after being requested to depart—or otherwise abused his right, as by improper importunity to guests to induce them to take passage with him; the plaintiff would have a right to reform that, and, if necessary, to forbid the defendant to enter, and treat him as a trespasser if he disregarded the prohibition.

So, if, after a lawful entry of the defendant, he committed an assault upon the plaintiff, or any trespass upon his property; the plaintiff might treat him as having entered for the unlawful purpose, and as a trespasser *ab initio.* 8 *Co.* (*Dub. ed.*) 291; 10 *Johns.* 373; 12 *Johns.* 408; 11 *East.* 402; 5 *Taunt.* 198.

Perhaps a trespass upon the person or property of a guest might come within the same rule—but this is not clear, and need not now be settled.

If others were guilty of an assault upon the defendant, or of misconduct towards him, that would not justify him in making an assault, except in self-defence, nor furnish an excuse for improper conduct on his part; but if he behaved himself with propriety, the misconduct of the drivers of

other lines towards him would furnish no ground for his exclusion, unless it was at the time of a disturbance, and for the purpose of restoring quiet to the house.

As the jury were not correctly instructed upon these points there must be a

*New trial.*