## BENNETT *vs.* DUTTON.

The proprietors of a stage coach, who hold themselves out as common carriers of passengers, are bound to receive all who require a passage, so long as they have room, and there is no legal excuse for a refusal. And it is not a lawful excuse, that they run their coach in connection with another coach, which extends the line to a certain place, and have agreed with the proprietor of such other coach not to receive passengers who come from that place, on certain days, unless they come in his coach.

The defendant was one of the proprietors, and the driver, of a stage coach, running daily between Amherst and Nashua, which connected, at the latter place, with another coach, running between Nashua and Lowell, and thus formed a continuous mail and passenger line from Lowell to Amherst, and onward to Francestown. A third person ran a coach to and from Nashua and Lowell ; and the defendant agreed with the proprietor of the coach connecting with his line, that he would not receive passengers who came from Lowell to Nashua in the coach of such third person, on the same day that they applied for a passage to places above Nashua. The plaintiff was notified, at Lowell, of this arrangement, but notwithstanding came from Lowell to Nashua in that coach, and then demanded a passage in the defendant's coach to Amherst, tendering the regular fare—*Held*, that the defendant was bound to receive him, there being sufficient room, and no evidence that the plaintiff was an unfit person to be admitted, or that he had any design of injuring the defendant's business.

CASE. The declaration alleged, that the defendant was part owner, and driver, of a public stage coach, from Nashua to Amherst, and Francestown—that on the 31st January, 1837, the plaintiff applied to him to be received into his coach, at Nashua, and conveyed from thence to Amherst, offering to pay the customary fare ; and that the defendant, although there was room in his coach, refused to receive the plaintiff.

It appeared in evidence, that at the time of the grievance alleged, there were two rival lines of daily stages, running between Lowell, in Massachusetts, and Nashua—that Jonathan B. French was the proprietor of one of these lines, and Nelson Tuttle of the other—that Tuttle's line ran no farther than from Lowell to Nashua—that French, and the proprietors of the defendant's line, were interested in a contract for carrying the United States mail from Lowell to Frances-

Bennett *v.* Dutton.

town, through Amherst, (dividing the mail money in proportion to the length of their respective routes,) so as to form one continuous mail route from Lowell to Francestown—that French, and the proprietors of the defendant's line, had agreed to run their respective coaches so as to form a continuous line for passengers, from Lowell, through Amherst, to Francestown, and that their agents and drivers might engage seats for the whole distance, at such rates of fare as they thought expedient ; and the amount thus received, in instances where they thought proper to receive less than the regular fare, was to be divided between said proprietors, in proportion to the length of their respective routes—that it was also agreed, that if the defendant's line brought down to Nashua an extra number of passengers, French should see them through, and be at the expense of furnishing extra coaches and horses, if necessary, to convey them to Lowell ; and, on the other hand, if French's line brought up an extra number of passengers from Lowell to Nashua, the proprietors of the defendant's line were to do the same, for the conveyance of such passengers above Nashua—and that it was further agreed (as Tuttle's line ran no farther than from Lowell to Nashua) by the proprietors of the defendant's line, that they would not receive into their coaches, at Nashua, passengers for places above Nashua, who came up from Lowell to Nashua, on the same day, in Tuttle's line ; the time of starting from Lowell, and arriving at Nashua, being the same in both lines.

One of the requisitions of mail contracts is, that each line of stage coaches running into another, so as to form a continuous mail line, shall give preference to passengers arriving in the line with which it connects, and shall forward them in preference to any others.

There were several other lines which started from Lowell at the same time with the lines before mentioned, running to other places, through Nashua ; and it was generally the understanding between their respective proprietors, that one line

should not take, for a part of the distance where the route was the same, passengers who were going on further in another line; though this understanding had been occasionally interrupted.

The plaintiff being at Lowell on the 31st of January, 1837, took passage and was conveyed to Nashua in Tuttle's line; and immediately on his arrival at Nashua applied to be received into the defendant's coach, and tendered the amount of the regular fare. There was room for the plaintiff to be conveyed on to Amherst, but the defendant refused to receive him.

The plaintiff was notified, by the agent for the line of French and the defendant, at Lowell, previous to taking passage in Tuttle's coach for Nashua, that if he wished to go from Nashua to Amherst on that day, in the regular mail line, he must take the mail line at Lowell; and that, if he took passage in Tuttle's line from Lowell to Nashua, he would not be received, at Nashua, into the defendant's coach.

The parties agreed that judgment should be rendered for the plaintiff, for nominal damages, or for the defendant, according to the opinion of this court upon these facts.

*Clark & G. Y. Sawyer*, for the plaintiff, cited *Story on Bailment* 380; 2 *Ld. Raym.* 909, *Coggs* vs. *Bernard*; *Jones on Bailment* 109; 2 *Barn. & Adolph.* 803, *Kent* vs. *Shuckard.*

*Baker*, (with whom was *C. G. Atherton*,) for the defendant. It is not denied, that anciently a common carrier was liable for refusing to carry goods; a common innkeeper, for refusing to receive a guest; a common ferryman, for refusing to carry a passenger; and generally, perhaps, that there was an implied obligation, upon every one standing before the public in a particular profession or employment, to undertake the duties incumbent upon it; though no case is recollected, in which it has been determined that the proprietor of a stage coach is liable for refusing to receive a passen-

ger. 2 *Black.* 451 ; 3 *Black.* 165 ; 1 *Bac. Ab.* 554 ; 1 *Vent.* 333 ; 2 *Show.* 327 ; *Hard.* 163 ; *Rob. Ent.* 103.

Formerly it was held, that where a man was bound to any duty, and chargeable to a certain extent by operation of law, he could not, by any act of his own, discharge himself; (1 *Esp. R.* 36 ; *Noy's Maxims* 92 ; *Doc. & Stud.* 270,) though it is now well settled that this obligation may be limited.

A liability for refusing to receive a passenger may be qualified by notice. Without notice, a common carrier stands in the situation of an insurer. This obligation the law imposes upon him the moment he takes upon himself the duties of carrier. His contract with the public is as an insurer ; and if goods are committed to his care while standing in this relation, he is liable as such. 6 *Johns.* 160 ; 3 *Esp.* 127 ; *Selw. N. P.* 395 ; 1 *Wils.* 181 ; 1 *Inst.* 89 ; 1 *T. R.* 33, 57 ; 5 *T. R.* 389 ; *Story on Bailment* 328 ; 11 *Pick.* 42 ; 4 *N. H. Rep.* 306.

But this contract, which is general with the public, may be made special. One who proposes to carry goods may undertake the business, not of a common, but of a special, carrier. He may give notice, when he commences business, that he does not assume all the responsibilities of a common carrier, technically so called ; that he will be liable to a certain extent, and upon certain conditions, and no farther. He may thus discharge himself from all responsibility, except perhaps in cases of gross negligence. 3 *Stark.* 337 ; 3 *Camp.* 27 ; *Story on Bail.* 338, 357 ; 3 *Taunt.* 271 ; 4 *Camp.* 41 ; *Jones on Bail.* 104 ; 6 *East* 564 ; 4 *Esp.* 178 ; 1 *H. Black.* 298. But the carrier is not liable for refusing to receive what he is under no obligation to carry, (16 *East* 244,) so that the carrier of goods may not only qualify his responsibility, for the safe transportation of goods, but his liability for refusing to receive them.

The principle to be derived from these cases, and upon which they all rest, is, that although the law imposes certain obligations upon one who undertakes the duties of a particu-

lar profession or employment, he is at liberty to assume those duties but in part, and thus limit his responsibility, provided he gives notice of his intention, generally, and that notice is brought home to the knowledge of the party interested. The principle is confined to no one branch or department of business; to no one case, or class of cases. Nothing more is required than that public notice should be given, how far the carrier intends to limit his responsibility, and that it should be known to the person to be affected by it, in season to save his interest. The main point is to show the intention of the carrier, and to communicate knowledge of his terms, seasonably, to the individual interested. 5 *East* 510; 2 *Camp.* 108; 1 *Stark. Cas.* 418; 2 *Ditto* 461; 4 *Burr.* 2298; 1 *Str.* 145; 1 *Bac. Abr.* 556; 2 *Stark. Ev.* 338; 1 *Pick.* 50. And, provided the intention be manifest, it is not material whether any other person may have known the conditions, except the party whose interest they may affect. 1 *Str.* 145; 4 *Burr.* 2298; 2 *Stark. Cas.* 461.

But, yielding these points, it is contended that the defendant is not liable. It was competent for him to make all such rules and regulations as might be necessary for the convenient and successful prosecution of the employment in which he was engaged. To prosecute this employment; to discharge his duties to the public, and particularly to the post-office department, it became necessary that some such arrangement as this should be made. It was as proper that he should prescribe the place where a passenger should be received, as the time when he should be received. It was not a refusal to receive all passengers, or this one in particular, but merely the regulation of the mode in which they would be received. Persons going from Nashua to Francestown were received at Nashua; persons going from Lowell to Francestown were received at Lowell. This was all that the defendant did. It was a mere regulation; not a refusal to discharge a duty imposed by law.

Bennett *v.* Dutton.

PARKER, C. J. It is well settled, that so long as a common carrier has convenient room, he is bound to receive and carry all goods which are offered for transportation, of the sort he is accustomed to carry, if they are brought at a reasonable time, and in a suitable condition. *Story on Bailment* 328 ; 5 *Bing. R.* 217, *Riley* vs. *Horne ;* (15 *Eng. C. L. R.* 426.)

And stage coaches, which transport goods as well as passengers, are, in respect of such goods, to be deemed common carriers, and responsible accordingly. *Story* 325.

Carriers of passengers, for hire, are not responsible, in all particulars, like common carriers of goods. They are not insurers of personal safety against all contingencies except those arising from the acts of God and the public enemy. For an injury happening to the person of a passenger by mere accident, without fault on their part, they are not responsible ; but are liable only for want of due care, diligence or skill. This results from the different nature of the case. But in relation to the baggage of their passengers, the better opinion seems to be that they are responsible like other common carriers of goods.

And we are of opinion that the proprietors of a stage coach, for the regular transportation of passengers, for hire, from place to place, are, as in the case of common carriers of goods, bound to take all passengers who come, so long as they have convenient accommodation for their safe carriage, unless there is a sufficient excuse for a refusal. 2 *Sumner* 221, *Jencks* vs. *Coleman ;* 19 *Wend. R.* 239.

The principle which requires common carriers of goods to take all that are offered, under the limitations before suggested, seems well to apply.

Like innkeepers, carriers of passengers are not bound to receive all comers. 8 *N. H. Rep.* 523, *Markham* vs. *Brown.* The character of the applicant, or his condition at the time, may furnish just grounds for his exclusion. And his object at the time may furnish a sufficient excuse for a refusal ; as,

if it be to commit an assault upon another passenger, or to injure the business of the proprietors.

The case shows the defendant to have been a general carrier of passengers, for hire, in his stage coach, from Nashua to Amherst, at the time of the plaintiff's application. It is admitted there was room in the coach ; and there is no evidence that he was an improper person to be admitted, or that he came within any of the reasons of exclusion before suggested.

It has been contended that the defendant was only a special carrier of passengers, and did not hold himself out as a carrier of persons generally ; but the facts do not seem to show a holding out for special employment. He was one of the proprietors, and the driver, of a line of stages, from Nashua to Amherst and Francestown. They held themselves out as general passenger carriers between those places. But, by reason of their connexion with French's line of stages from Lowell to Nashua, they attempted to make an exception of persons who came from Lowell to Nashua, in Tuttle's stage, on the same day in which they applied for a passage for the north. It is an attempt to limit their responsibility in a particular case or class of cases, on account of their agreement with French.

It is further contended, that the defendant and other proprietors had a right to make rules for the regulation of their business, and among them a rule that passengers from Lowell to Amherst and onward, should take French's stage at Lowell ; and that by a notice brought home to the individual, the general responsibility of the defendant, if it existed, is limited.

But we are of opinion that the proprietors had no right to limit their general responsibility in this manner.

It has been decided, in New-York, that stage coach proprietors are answerable, as common carriers, for the baggage of passengers—that they cannot restrict their common law liability, by a general notice that the baggage of passengers is at the risk of the owners—and that if a carrier can restrict

Bennett *v.* Dutton.

his common law liability, it can only be by an express contract. 19 *Wend.* 234, *Hollister* vs. *Nowlen.* And this principle was applied, and the proprietors held liable for the loss of a trunk, in a case where the passenger stopped at a place where the stages were not changed, and he permitted the stage to proceed, without any enquiry for his baggage. 19 *Wend.* 251, *Cole* vs. *Goodwin.* However this may be, as there was room in the defendant's coach, he could not have objected to take a passenger from Nashua, who applied there, merely because he belonged to some other town. That would furnish no sufficient reason, and no rule or notice to that effect could limit his duty. And there is as little legal reason to justify a refusal to take a passenger from Nashua, merely because he came to that place in a particular conveyance. The defendant might well have desired that passengers at Lowell should take French's line, because it connected with his. But if he had himself been the proprietor of the stages from Lowell to Nashua, he could have had no right to refuse to take a passenger from Nashua, merely because he did not see fit to come to that place in his stage. It was not for him to enquire whether the plaintiff came to Nashua from one town or another, or by one conveyance or another. That the plaintiff proposed to travel onward from that place, could not injuriously affect the defendant's business; nor was the plaintiff to be punished, because he had come to Nashua in a particular manner.

The defendant had good right, by an agreement with French, to give a preference to the passengers who came in French's stage; and as they were carriers of the mail on the same route, it seems he was bound so to do, without an agreement. If, after they were accommodated, there was still room, he was bound to carry the plaintiff, without enquiring in what line he came to Nashua.

*Judgment for the plaintiff.*