Moses *v.* The Boston and Maine Railroad.

## MOSES *v.* THE BOSTON AND MAINE RAILROAD.

A public notice will not discharge a common carrier from his legal liability to answer for an accidental loss or destruction of the goods in his possession.

Where a railroad corporation, being common carriers, have a warehouse at which they receive goods for transportation, if goods are delivered there with instructions to forward presently, while the goods remain in the warehouse for the convenience of the railroad, until they can be forwarded in the usual course of business, the railroad hold them as common carriers, and are liable for them as such.

But if the goods are kept back in the warehouse for the convenience of the owner, and by his order, while they are so detained the railroad will not be liable as common carriers, but as depositories only.

The defendants gave public notice, which they offered to bring home to the knowledge of the plaintiff, that all goods would be at the owner's risk in the company's warehouses: and that no responsibility would be admitted for any loss or injury except such as might arise by fire from the locomotives, or by negligence of the agents of the company. The plaintiff's goods were delivered at the warehouse, with instructions to be forwarded presently, and were consumed in the warehouse by an accidental fire, not caused by the locomotives— *held,* that the defendants were liable for the goods as common carriers, notwithstanding the notice.

Instructions to forward goods forthwith, may be inferred from an established course of dealing between the owner and carrier, without direct evidence of such instructions.

So the assent of the carrier to the delivery of goods may be inferred from a like course of dealing, without any express act or assent of the carrier or his agents in relation to the particular goods in question.

Where the owner has given the carrier instructions to forward immediately, goods which are to be afterwards delivered by a cartman, and the cartman at the time of the delivery, without authority from the owner, gives contrary directions, the owner is not bound by such directions of the cartman, nor can the carrier protect himself by them.

In an action by the owner of goods against a common carrier, a cartman employed by the plaintiff to deliver the goods, is a competent witness for the plaintiff to prove the delivery, without a release, though the defendant offer to prove to the court that the goods were lost by the misconduct of the witness.

CASE. The declaration alleged that on the third day of April, 1848, the defendants were common carriers of goods for hire, from Dover to Boston, and on that day the plaintiff, at their request, delivered to them 144 reams of paper, to be taken care of, safely kept, and securely conveyed from Dover to Boston, there to be safely delivered to Grant, Daniell & Co., for a certain reward ; in consideration whereof the defendants received the goods and became bound by law, and then and there promised to take care of and safely carry the same from Dover to Boston, and there deliver them to Grant, Daniell & Co. Yet the defendants did not take care of, carry and deliver the same, &c., but so negligently conducted, &c., that the goods were wholly lost to the plaintiff.

Plea, not guilty.

The court held that under this count the defendants could be charged only as common carriers, and that evidence tending to shew that, if they were not liable as such, they were chargeable as warehousemen, or depositories, for want of ordinary care was not admissible.

The plaintiff offered Moses Gowen, the cartman to whom the goods were delivered by him to be carried to the dépôt, to prove the delivery to the defendants. They objected to his admission ; but the court held his testimony was to be received, like that of other agents, from necessity. The defendants then offered to

prove that the loss complained of was caused by Gowen's misconduct; but the court admitted him to testify.

It appeared that after the paper was left at the depot, and before it was forwarded, the depot with its contents, including the paper, was destroyed by fire.

The defendants offered to prove that they had limited their liability by a notice, which they offered to bring home to the knowledge of the plaintiff, in the form following:

" No agent of the company is authorized to take bank notes or other valuable papers for transportation. *All goods will be at the owner's risk in the Company's ware-houses: and no responsibility will be admitted for any loss or injury, except such as may arise by fire from the locomotives, or by negligence of the agents of the Company.* Nor for a greater amount than $100 on any one package or article, unless the value thereof be disclosed and an extra amount paid therefor."

The plaintiff denied the power of a common carrier to limit his liability by such notice; and the court ruled that so much of the notice as is included between the words " all goods," and " agents of the company," inclusive, is illegal and inoperative.

It appeared that the defendants, for a year or two before, had been in the habit of transporting for the plaintiff from Dover to Boston almost every week similar paper, most of which had been carted from the plaintiff's mills to the depot by Gowen and Wentworth, or by persons in their employment. It did not appear that any of these cartmen had ever before given any directions about the time or manner of forwarding the paper by the defendants. The defendants offered to prove that Moses Gowen, a cartman, one of the firm of Gowen & Wentworth, brought some of the plaintiff's paper to the depot on Saturday before the fire occurred on Wednesday, and told the freight master of the defendants, that the plaintiff did not wish it to be sent until further orders; that it was part of a lot, and the plaintiff wanted the lot to go all together; that he, Moses Gowen, was to bring two more loads, one on Monday, and the last on Wednesday; and to prove that this paper, then delivered by

Moses Gowen was part of the paper alleged in the plaintiff's declaration to have been lost by the defendants.

But the court held the evidence not admissible without further evidence of authority to give such directions; and that the defendants could not protect themselves by following the directions of the cartman who delivered the goods, without showing his authority.

The court ruled that the delivery of the paper at the usual place of leaving goods to be forwarded, is *prima facie* evidence of a delivery to be forwarded presently, and the liability of the carrier as such at once attaches; but if it is shewn that the goods were delivered for the purpose of being kept a certain time, or till the occurrence of a certain event, beyond the usual time of forwarding such goods, the carrier, during that delay, is not liable as a carrier, but as a depositary only; that if the goods were sent to the depot without any direction *to what place* they were to be forwarded, the carrier would be liable only as a depositary until such directions were given; but that such directions might be inferred from a uniform course of dealing as to the kind of goods in question, if such dealing is shewn.

That the jury might infer the assent of the defendants to the delivery of the goods, and their acceptance of them, from the course of dealing between the parties or from other circumstances, without proof of any express act or assent of the company or their agent in relation to the particular goods.

The defendants contended that the question whether they were to be charged as common carriers, or as depositaries only, was a question of law, to be decided by the court; but it was held that this was a mixed question of law and fact, to be decided by the jury under the instructions of the court as to the law.

To the foregoing rulings the defendants excepted.

The jury found a verdict for the plaintiff, by consent, to be set aside and a new trial granted, or judgment rendered on the verdict, agreeably to the opinion of the court upon the foregoing questions.

*Wiggins*, for the defendants.

Gowen was an incompetent witness. He was not only the agent of the plaintiff, but he was also a common carrier, and subject to all the responsibilities which the law imposed on him in that character. Story on Bailments, § 496; Bouvier's Law Dictionary, Tit. Com. Carriers; 1 Smith's Leading Cases, 231, and cases cited; and he was admitted to prove the safe delivery of the goods, and so discharge himself not only from the consequences of his negligence as an agent, but from his legal liability as a common carrier. He is a witness for himself, and comes to discharge himself from his own contract.

In an action against the defendant for the negligence of his servant, the servant is not competent to disprove his own negligence. 1 Phillips' Evidence, 130, 131, Cowen and Hill's Notes; 1 Greenl. Ev., § 416, 417; *Green* v. *New River Co.*, 4 T. R. 589.

There is no distinction between the case where the principal or master is plaintiff, and where he is sued for the negligence or misconduct of the servant. *Morish* v. *Foote*, 8 Taunton 454; *Emerton* v. *Andrews*, 4 Mass. 653; 1 Greenl. Ev. § 394.

As the defendants offered to prove that the loss happened by the negligence of the witness, it must be taken that the fact was so. Though the direct issue on the record is not on the negligence of the witness, yet as the defendants allege that the goods were lost by the fault of the witness, and that, if the fact were established, would be decisive of the case, it is substantially the same thing, and the witness incompetent within the rule established by the cases. *Korrison* v. *Coatsworth*, 1 Carr. & Payne, 645; *Whitmore* v. *Waterhouse*, 4 Carr. & Payne 383; *Hawkins* v. *Finlayson*, 3 Carr. v. Payne 305; *Miller* v. *Faulkner*, 1 Camp. Rep. 251; *Green* v. *New River Co.*, 4 T. R. 589; *Corking* v. *Jarrard*, 1 Camp. Rep. 37; 1 Greenl. Ev. § 396.

All the authorities, where carriers have been called to prove a delivery of goods, are cases where the question of delivery arose after the goods arrived at their destination.

Necessity is the ground on which agents have been admitted

to testify, notwithstanding their interest; but that principle does not apply to this case.

As to the ruling of the court on the effect of the notice, four important facts are admitted, either expressly or by implication, in the case.

1. The plaintiff had knowledge of this notice prior to the undertaking of the defendants.

2. The packages were destroyed in the defendants' warehouse, before they were put upon transportation, by an accidental fire.

3. No negligence, fraud, or other misconduct is imputed to the defendants.

4. The defendants were carriers of merchandise. This part of the case rests entirely on the naked question of the liability of carriers under the notice.

I. The notice created a special contract between the parties. In the authorities which we cite, the phrases, " express contract," " express stipulation," and " special acceptance," are used indiscriminately, as meaning the same thing. *Clay* v. *Willan*, 1 H. Black. 298, and *Hutton* v. *Bolton*, there cited; Story on Bailments, § 551; *Gibbon* v. *Paynton*, 4 Burrow 2298; *Nicholson* v. *Willan*, 5 East 507; *Colden* v. *Bolton*, 2 Campbell 108; *Kerr* v. *Willan*, 1 Holt 643; *Leeson* v. *Holt*, 1 Stark. Rep. 186; *Davis* v. *Willan & a.*, 2 Stark. Rep. 279; *Lyne* v. *Wells*, 5 East 248; *Latham* v. *Rutley*, 2 Barn. & C. 20; 2 Kent's Com. 607.

II. Such contracts are lawful, and supersede the rule of the common law in relation to common carriers. To sustain this position we shall rely principally on English cases, for American Reports are somewhat barren on the subject.

1. A carrier may *limit* his responsibility by a notice brought home to his employer.

The first case where the matter is considered is *Nicholson* v. *Willan*, in 1804. The doctrine, however, must have been admitted earlier, for in that case it is said that it had prevailed for a long time; and in *Smith* v. *Horne*, it is said the doctrine was recognized as early as 1785, and we find the case of *Clay* v. *Willan*, 1789, 1 H. Black. 298.

The following cases and authorities go to the same point: *Nicholson* v. *Willan,* 5 East 507 ; 1 Saunders' Pl. & Ev. 332 ; *Kerr* v. *Willan,* 1 Holt 643 ; *Smith* v. *Horne,* 8 Taunton 145 ; *Riley* v. *Horne,* 5 Bingham 217 ; *Harris* v. *Packwood,* 3 Taunton 264 ; *Down* v. *Tromont,* 4 Campbell 40 ; *Gouger* v. *Jolly,* 1 Holt 317 ; *Davis* v. *Willan & a.,* 2 Stark. Rep. 279 ; *Roskell* v. *Waterhouse,* 2 Stark. Rep. 461 ; *Brek* v. *Evans,* 3 Camp. 267 ; *Yate* v. *Willan,* 2 East 128 ; *Isett* v. *Mountain,* 4 East 371 ; *Thorogood* v. *Marsh,* 1 Gow's Rep. 105 ; *Leeson* v. *Holt,* 1 Stark. Rep. 185 ; *Marsh* v. *Holt,* 5 Barn. & C. 322 ; *Munn* v. *Baker,* 2 Stark. Rep. 255 ; Chitty on Contracts (6th Am. Ed.) 488, 489 ; 1 Selwyn's N. P. 329.

In no case in the English Reports has the validity of these notices been questioned. The following American authorities are to the same point: 2 Kent's Com. (Ed. of 1848) 603, 607, 610 ; *Beekman* v. *Shouse,* 5 Rawle 179 ; *Bingham* v. *Rogers,* 6 Watts & S. 495 ; *Bean* v. *Green,* 3 Fairfield 422 ; *Parker* v. *Flagg,* 13 Shepley 181 ; *Macped* v. *McKown,* 1 Mills' Lou. R. 248.

In New York we admit that the courts have refused to admit the English doctrine ; 21 Wendell 354. In this State no rule has been established. The point was not made and is not decided in *Bennet* v. *Dutton,* 10 N. H. Rep. 487.

2. Common carriers of goods may exclude all responsibility, except where they are guilty of negligence, fraud, or other misconduct ; 2 Stephens' N. P. 999 ; Chitty on Contracts (6th Am. Ed.) 488 ; 2 Kent's Com., (Ed. of 1848,) 606, 607 ; Jones on Bailment, Appendix, 27 ; *Manning* v. *Todd,* 4 Campbell 224 ; *S. C.,* 1 Stark. Rep. 72 ; *Ross* v. *Johnson,* 5 Burrow 2827 ; *Leeson* v. *Holt,* 1 Stark. Rep. 186 ; *Evans* v. *Soule,* 2 M. & S. 1 ; *Latham* v. *Rutley,* 2 Barn. & C. 20 ; Abbot on Shipping, ch. 3, § 4. Jones on Bailment, 118 ; *Lyon* v. *Wells,* 1 Smith 84 ; *Levi* v. *Waterhouse,* 1 Price 280.

The cases 19 Wendell 234, 19 Wendell 251, 21 Wendell 153, and 2 Hill 623, were actions to recover for the loss of passengers' baggage, and in that respect differed from this.

The law never raises an implied contract against an express one. *Toussaint* v. *Martinet*, 2 T. R. 105 ; *Weaver* v. *Burroughs*, 1 Strange 648.

3. The defendants were warehousemen as well as common carriers, and held the goods as warehousemen under the notice. *Thomas* v. *Boston and Providence R. R.*, 10 Met. 477 ; *Garside* v. *Trent and Mersey Nav. Co.*, 4 T. R. 581 ; *Young* v. *Smith*, 3 Dana 92 ; *Rowe* v. *Pickford*, 1 Moore 526 ; *S. C.*, 8 Taunton 83 ; *Foster* v. *Frampton*, 6 Barn. & C. 107.

4. Evidence of directions by the cartman should have been received without showing any special authority. His statement was part of the *res gestœ*. The plaintiff adopts his act of delivery, and must be bound by what he said at the time. It is immaterial whether the cartman had authority to give the direction or not. *Sweeting* v. *Turner*, 10 Johnson 225 ; *Hurd* v. *West*, 7 Cowen 752 ; *Woods* v. *Clark*, 24 Pick. 35 ; and these directions may be proved by other persons, notwithstanding the agent is a competent witness. *Baring* v. *Clark*, 19 Pick. 220 ; *Towle* v. *Hastings*, 10 Vesey 127 ; *Langhorn* v. *Allnut*, 4 Taunton 519 ; 1 Phillips' Ev. 99, 100 ; *Helyer* v. *Hawke*, 5 Esp. 74. This point has been lately decided in Massachusetts, in *Sturtevant* v. *these defendants*.

*Christie*, for the plaintiff.

A servant or agent is competent to prove his authority and the due execution of it, notwithstanding his interest ; otherwise, in this case, the plaintiff would be obliged to send a witness with the cartman to prove that he delivered the goods as he was ordered. 1 Greenl. Ev. § § 416, 417, 394, 395 and 396 ; 3 Esp. 48 ; Buller N. P. 289 ; *Green* v. *New River Co.*, 4 T. R. 590 ; and a carrier is comprehended under this rule. *Barker* v. *MacRae*, 3 Camp. 144 ; *Martin* v. *Horrell*, 1 Strange 647 ; *Bank* v. *Cornell*, 2 N. H. Rep. 324.

The ruling on the question of notice was correct. While the goods are in the defendants' warehouses, as such, they may limit their liability ; but the defendants have no warehouses except

for storage until the goods are delivered. They receive and hold as carriers until the transportation is completed, and they cannot limit their liability by notice. *Hollister* v. *Nowlen,* 19 Wendell 234; *Cole* v. *Goodwin,* 19 Wendell 251; *Clark* v. *Faxon,* 21 Wendell 153; *Gould* v. *Hill,* 2 Hill 623; *Jones* v. *Voorhees,* 10 Ohio 145; *Fish* v. *Chapman,* 2 Kelley 349; *Atwood* v. *Reliance Co.,* 9 Watts 87; *New-Jersey Steam Navigation Co.* v. *Merchants' Bank,* 6 Howard 344. *Bennet* v. *Dutton,* 10 N. H. Rep. 487, recognizes the same doctrine. The notice must be assented to in order to relieve the carrier. *Stuart* v. *Crawley,* 2 Stark. Rep. 323; *Randleson* v. *Murray,* 8 Ad. & E. 109; *Dale* v. *Hall,* 1 Wilson 281; *Maving* v. *Todd,* 1 Stark. Rep. 72; *Forward* v. *Pittard,* 1 T. R. 27; *Hyde* v. *Trent and Mersey Co.,* 5 T. R. 389; Angell on Carriers 129; 5 Esp. 41; *Fragano* v. *Long,* 4 B. & C. 219. The cartman had no authority to give new directions respecting the goods, either express or implied, from his employment as carrier.

PERLEY, J. Was Gowen a competent witness? He was employed by the plaintiff as his agent to carry and deliver the goods to the defendants, and he was admitted to prove that he carried and delivered them accordingly. The plaintiff's action is founded, not on the neglect, but on the performance of the agent's duty. The witness was interested in the judgment, that the plaintiff might recover; for though the judgment could not be used against the witness, to shew his liability for the goods, he might use it to protect himself against a suit brought by the plaintiff. If the plaintiff should recover against the defendants, he could not recover again of the witness for the same goods.

But an agent or servant is admitted, on the ground of necessity, to prove his authority and the due execution of it, in cases where the claim of the principal or master is founded on the act of the witness done according to his duty and his undertaking. This exception to the general rule of evidence is admitted in this State. *Strafford Bank* v. *Cornell,* 1 N. H. Rep. 192; and a carrier who is called to prove the delivery of goods, is within this exception. *Barker* v. *MacRae,* 3 Camp. 144.

Where the principal is sued for negligence or misconduct of the agent, the agent is not competent without a release ; and where the plaintiffs' action is founded on a charge of negligence in the defendant, and the direct question is whether the defendant or the servant of the plaintiff was guilty of the negligence, the servant is not a competent witness for the plaintiff. *Morish* v. *Foote*, 8 Taunton 454 ; *Kenniston* v. *Coates*, 1 Carr. & Payne 645 ; *Miller* v. *Falconer*, 1 Campbell 351.

It would, perhaps, be difficult to extract from the cases any principle that could be readily applied to determine the limits of this exception to the general rule of evidence ; for in some cases the servant has been admitted to testify for his master, though the action was founded directly on the omission of the witness to perform his duty ; as, where the agent paid money of the plaintiff to the defendant by mistake. *Martin* v. *Horrell*, 1 Strange 647 ; *Barker* v. *McRae*, 3 Camp. 144.

But the case of a cartman, who is called by the plaintiff to prove that he delivered goods to the defendants according to his order, falls directly within the exception as established by the authorities, and no case could be stated in which the reason of the rule would apply more strongly.

It may be doubted whether cartmen or *truckmen* employed to carry goods from one part of a city or town to another, are to be regarded as common carriers, within the legal meaning of the term. *Robinson* v. *Dunmore*, 2 Bos. & Pul. 416 ; *Bund* v. *Dale*, 8 Carr. & Payne 207 ; Story on Bailments, § 496.

But taking the cartman to be a common carrier, he is clearly within the exception which allows an agent to testify notwithstanding his interest.

Nor did the offer of the defendants to prove to the court that the loss happened by the misconduct of the witness, change his legal position. The offer was general, not stating the nature of the misconduct proposed to be shewn ; but it must be understood to mean some misconduct of the witness, while he had the goods in charge as carrier for the plaintiff. If, after the due transportation and delivery of the goods to the defendants, the

witness was guilty of any act which caused the loss of the goods while in their possession, the wrongful act of the witness could not discharge the defendants; nor could a judgment in this suit for the plaintiff be used by the witness in an action by the defendants against him for the injury to the goods caused by his misconduct. On the contrary, in that case, a judgment in this suit for the defendants might be used to defend him against their action. They could recover against him only on the ground that they were liable to the plaintiff for the loss which the act of the witness had caused. The misconduct must therefore have consisted in the neglect of the witness to deliver the goods in such condition as would make the defendants liable for them to the plaintiff.

If evidence had been heard by the court which satisfied them that the witness did not deliver the goods at all, or delivered them in such condition that the defendants were not liable for them as common carriers, that decision of the court could never have been used against the witness in any suit that the plaintiff might have brought against him. His legal position would remain precisely the same. He would be interested that the plaintiff should recover a judgment which would protect him against an action brought by the plaintiff for the same goods. This interest he had from his position in the cause, without such evidence to the court, and his competency cannot be made to depend on any conjecture the court might make, from the particular circumstances of the case, as shewn to them on an interlocutory point, as to the probability of his needing the protection of a judgment for the plaintiff. His legal liability gave him a legal interest. The amount of his liability was immaterial. His legal interest could not have been discharged by evidence addressed to the court, which might satisfy them that he had not been in fact guilty of any misconduct; and on the same principle, the court could not hear evidence that he was actually liable for the goods. The legal position of the witness, which involves his interest, would not be at all affected by such evidence.

The witness was called to prove that he safely delivered the

goods to the defendants. He was a competent witness to prove that fact, and the substance of the defendants' proposition was to show the court in advance that he did not so deliver the goods; or, in other words, that the testimony which he was expected to give was false. It was an attempt to anticipate the whole merits of the cause, by trial of the fact on evidence to the court, which was then in issue before the jury; for if the goods were not duly delivered by the witness to the defendants, there was no ground on which the plaintiff could recover. If the defendants could have proved to the jury, what they offered to prove to the court, it would have been a decisive and conclusive answer to the plaintiff's case. The evidence was properly rejected.

The defendants have no authority to keep a warehouse except as incidental to their business of common carriers. If goods are deposited in their warehouse to wait for the usual trains, the defendants keep them for their own convenience, in their capacity of carriers, and the goods are not in any proper sense stored for the owners. The defendants in such case receive and hold the goods as carriers. If the goods are kept back for the convenience and by the order of the owner, the rule may be different, and as it was stated by the court. The ruling on this point was sufficiently favorable to the defendants. *Forward* v. *Pittard*, 1 T. R. 27; *Boys* v. *Pink*, 8 Carr. & Payne 361; *Camden and Amboy R. R.* v. *Belknap*, 21 Wendell 354.

The case shews a course of dealing between the parties, from which the jury might infer that the defendants were instructed to forward the goods forthwith. If no different instructions were given, the defendants would be authorized to carry the goods as they had habitually carried the same kind of goods for the plaintiff during the two preceding years, and if they understood clearly that such were the intentions of the plaintiff, they would be bound to carry the goods accordingly, precisely as if express instructions had been given to that effect.

The court properly left it to the jury to find, from this course of dealing, whether the defendants were, as matter of fact, instructed to forward the goods forthwith, and held that if no

instructions were given, the defendants would only be liable as warehousemen. The jury therefore must be understood to have found as matter of fact, that the defendants had sufficient directions to forward the goods immediately.

The defendants offered to prove that the cartman who delivered the goods to them, directed that the goods should be kept back till farther orders. The court held the evidence inadmissible, without farther evidence of authority from the plaintiff to give the directions. There was no evidence of any express authority, and nothing from which it could be implied, except the fact that the plaintiff sent the goods by the cartman to be delivered to the defendants; and we must take it that no such authority was in fact given, but that the direction was given without any authority, and was the mere wrongful interference of the cartman. This is not the case where an agent has authority to give instructions, and by mistake or design gives a wrong direction. The cartman had no agency in this matter; he was employed simply and solely to carry and deliver the goods, and his employment implied no authority to make or to order any further disposition of them. Nor is this a case where goods were sent to be delivered to the railroad without any antecedent instructions for their transportation. For the jury have found the fact that the defendants were sufficiently instructed by the course of former dealing, and were bound by those instructions to carry the goods forthwith, unless they had new instructions. The case, therefore, stands thus: the plaintiff gave direction to the defendants that these goods were to be carried forthwith; they employed a cartman to carry and deliver the goods to the defendants, and the cartman wrongfully and without actual authority undertook to give different orders.

A carrier is not a mercantile agent, entrusted with a general power of disposition over the goods which he carries; his business is to carry and deliver. The owner does not hold him out as a general agent. It is no part of the act of carrying and delivering to make any further disposition of the goods. Story on Agency, § 84. We think that the ruling of the court on this point was correct.

The question remains, which arises upon the ruling of the court as to the effect of the notice given by the defendants, that no responsibility would be admitted for any loss or injury, except such as might arise by fire from the locomotives, or by negligence of the agents of the company.

The defendants were common carriers, and as such were liable by the general rule of the common law for all losses, except those which might be caused by the act of God or by the public enemy. The goods destroyed in this case were such as were carried in the ordinary course of the defendants' business; their value was not disproportionate to their bulk; the defendants could not be deceived as to the extent of the risk which they incurred; and if a public notice can discharge the defendants from their legal liability as common carriers in this case, it will in every other. The court are therefore called upon to decide the general question whether a common carrier, by a public notice, brought home to the knowledge of the owner from whom he receives goods, can discharge himself from the legal responsibility of his employment; or, in other words, whether by such notice his liability can be limited to losses and injuries caused by his own want of due fidelity and care. The question is not whether the general rule of law may be controlled and superseded by an express agreement between the owner and the common carrier of goods; but whether from the mere fact of public notice the law will imply such an agreement.

The reasons upon which the strict rule of the common law was founded are extremely obvious, and have been often stated. While the goods are in the course of transportation, the carrier has the sole charge of them, and the owner has no power to protect his property by any care of his own. The carrier has the most tempting opportunities for embezzlement and for fraudulent collusion with others. It would be extremely difficult in all cases, and in many cases quite impossible, for the owner to prove the fraud or negligence by which his goods had been lost. The policy of the law imposed the loss upon the party to whose fidelity and care the property was entrusted, and thus encouraged the

utmost diligence, where negligence, if it existed, could seldom be detected. This simple and uniform rule fixed the rights of the parties and prevented dispute and litigation.

The reasons for adhering to the ancient rule still exist in unabated force. Collusion with thieves and robbers is perhaps less to be apprehended now than in the rude times when the rule was first established. But on the other hand the immense increase of the business, the inestimable value of the commodities now entrusted to the charge of common carriers, and the vast distances to which they are transported, have multiplied the difficulties of the owner, who seeks to recover for the loss of his goods, and have added greatly to the opportunities and temptations of the carrier who might be disposed to neglect or violate his trust. On the whole, we are not able to see any change in the business of common carriers which calls for a modification of the old rule.

Nor does there appear to be any real hardship in the application of this rule to the common carrier. The price of transportation will include a reasonable premium for this kind of insurance. The rule being uniform and well understood, in this as in other similar cases, the rate of compensation regulates itself; and the loss, if no fault can be charged anywhere, will be cast, on principles of true policy, upon the party whose diligence and care will be encouraged and stimulated by the risk.

It would seem to be conceded that the decisions in England, which allowed a common carrier to discharge himself from his legal liability by a public notice, were an innovation upon the ancient rule of the common law. *Leeson* v. *Holt*, 1 Stark. Rep. 186 ; *Smith* v. *Horne*, 8 Taunton 144.

Effect appears to have been first given to these notices in cases where a fair application of the old common law principle would have been sufficient to protect the carrier; as where the owner sought to recover for the loss of cash or other articles of great value and small bulk, without notice to the carrier of the amount of his risk, and without payment of a proportionate compensation. If the carrier were deceived by the owner as to the

value of the thing carried, on general principles, without the aid of any notice, the carrier ought not to be held liable beyond the risk which he had just reason to suppose that he had undertaken. If the article were delivered in such condition and shape as to appear of small, when it was in fact of great value, and the true value could not be ascertained by reasonable diligence, the carrier would be deceived and mislead as much as by a positive misrepresentation of the owner. He might well insist that he had not agreed to become responsible for goods of whose value he had no notice or means of knowledge, and for the care of which he had received no adequate compensation. The carrier who gave notice that he would not be liable for cash or other like articles of great value, unless he had notice of the amount and was paid in proportion, hardly claimed anything more than a fair and honest application of the general rule of law which defined his liability.

The doctrine having thus obtained admission in these specious cases, spread gradually and insidiously until it was said by an eminent judge that the qualifications and limitations of the carrier's liability appeared to have excluded all responsibility whatever. *Leeson* v. *Holt*, 1 Stark. Rep. 186.

When this doctrine was once admitted, the courts were soon filled with questions arising on the construction of the various notices given by different carriers, and on the evidence necessary to bring the notice home to the owners of goods. But the courts did not think themselves at liberty to retrace their steps. The rule that a common carrier might by a notice discharge himself from liability for all losses, except such as were caused by his own misconduct, was considered as established by a series of decisions. But the judges, who felt themselves bound to admit the rule, administered it with much apparent reluctance, strongly expressed their regret that it had ever been allowed, and foretold the necessity of legislative interference to remedy the mischiefs caused by an inconsiderate departure from the ancient rule of common law. Thus Lord *Ellenborough*, in *Nicholson* v. *Willan*, 5 East 513, says, " we cannot do otherwise than sustain

such a right in the present instance, however liable to abuse and productive of inconvenience it may be ; leaving it to the legislature, if it shall think fit, to apply such remedy hereafter as the evil may require." And in *Down* v. *Tromont*, 4 Campbell 41, he says, " I am very sorry, for the convenience of trade, that carriers have been allowed to limit their common law responsibility ; and some legislative measure upon the subject will soon become necessary." So in *Maving* v. *Todd*, 1 Stark. Rep. 92, the same judge says, " I am sorry the law is so ; it leads to very great negligence." And in *Kerr* v. *Willan*, 1 Holt 643, he uses this language on the subject : " all the difficulties arise by a departure from the old law which was acted upon for ages ; and there is no doubt but it will require many struggles to get clear of the wisdom of our ancestors." *Dallas*, C. J., in *Smith* v. *Horne*, 8 Taunton 144, expresses his dissatisfaction with the extent to which the doctrine had been pressed, and *Burrough*, J., in the same case says, " the doctrine of notice was never known until the case of *Forward* v. *Pittard*, 1 T. R. 27. I lament that the doctrine was ever introduced into Westminster Hall." *Best*, C. J., in *Brooke* v. *Pickwick*, 4 Bingham 218, says, " I wish that those notices had never been holden sufficient to limit the carrier's responsibility." *Le Blanc*, J., expresses his dissatisfaction with the rule, in *Beck* v. *Evans*, 16 East 248, and *Mansfield*, C. J., in *Harris* v. *Packwood*, 3 Taunton 271.

At length the uncertainty and confusion introduced by this innovation upon the old rule fixing the liability of common carriers, produced the legislative interference which had been predicted. By the statutes 11 Geo. IV., and 1 Will. IV. ch. 68, the rule of the common law has been substantially restored in England.

The English decisions giving effect to carriers' notices, were all long subsequent to our Revolution, and therefore have no binding authority in this State ; and there has been no experience in England under those decisions that can encourage us to follow their courts in admitting these notices to supersede the fixed and simple rule of the common law.

In this country the decisions on this point have not been unanimous; but without going into an extended examination of the cases, it may be safely said that the weight of American authority is strongly in favor of adhering to the strictness of the ancient rule. *New-Jersey Steam Navigation Co.* v. *Merchants' Bank,* (opinion of *Nelson,* J.,) 6 Howard 344; *Hollister* v. *Nowlan,* 19 Wendell 240 ; *Cole* v. *Goodwin,* 19 Wendell 272; *Jones* v. *Voorhees,* 10 Ohio Rep. 145.

In Maine the courts appear to consider themselves as bound by the authority of an early decision, to give these notices effect. *Sager* v. *P. S. P. & E. Rail Road ;* 31 Maine 228.

In *Bennet* v. *Dutton,* 10 N. H. Rep. 487, the point was not perhaps distinctly raised upon the case; but *Parker,* C. J., in delivering the opinion of the court, cites with apparent approbation the rule laid down in *Hollister* v. *Nowlan,* that common carriers cannot limit their liability by a public notice, and *Bennet* v. *Dutton* directly decides the point that stage coach proprietors cannot, by notice, relieve themselves from their legal obligation to carry passengers on their routes in the ordinary way and at the ordinary rates.

These notices have been allowed to limit and qualify the legal liability of a common carrier, on the ground that the law would imply from them a special contract between the owner of goods and the carrier, which superseded the general rule of the law. The carrier gives notice that he will carry only on certain terms and conditions ; the owner after receiving the notice delivers the goods to the carrier for transportation, and the argument is that the owner must be understood to assent and agree that his goods shall be carried on the terms stated in the notice.

To this argument it would not be easy to furnish a satisfactory answer, if the law placed the carrier in a position to insist on the terms of his notice. But the law does not place him in any such position. He cannot say to the owner, " I will not carry your goods unless you agree to the terms which I dictate." Like an innkeeper, he holds a sort of official relation to the public. He is bound to carry at reasonable rates such commo-

Moses *v.* The Boston and Maine Railroad.

dities as are in his line of business for all persons who offer them, as early as his means will allow. He cannot refuse to carry a proper article, tendered to him at a suitable time and place, on the offer of the usual reasonable compensation. Story on Bailments, § 508; *Riley* v. *Horne*, 5 Bingham Rep. 217, 224; *Bennet* v. *Dutton*, 10 N. H. Rep. 486.

When he undertakes the business of a common carrier, he assumes this relation to the public, and he is 'not at liberty to decline the duties and responsibilities of his place, as they are defined and fixed by law. If the owner of goods at the time of the delivery should say to the carrier, " I have seen your notice, but I decline to send the goods on the terms stated in it, and insist that you shall receive and carry them under the liability which the law imposes on you in your capacity of a common carrier," the carrier could not refuse to take the goods, and in such case it certainly could not be intended that there would be any agreement of the parties to control the general rule of law. The common carrier holds himself out as such, and as such he assumes certain risks and responsibilities imposed upon him by law. Suppose that at the same time, he gives notice that he will not be bound to the liabilities which the law, on grounds of public policy, annexes to the public employment that he has undertaken. He cannot thus throw off the duties and responsibilities of his place. The owner has a right to require that his goods shall be carried on the terms which the law imposes on the carrier; and the cases which give effect to carriers' notices must assume that the owner has voluntarily, without any consideration, relinquished and waived the important right which the law gives him of having his goods carried at the risk of the carrier.

We think the law cannot make the inference that the owner of goods has waived his legal right, and voluntarily made a contract to relinquish a claim that the law gives him, merely because the carrier has publicly announced his determination to throw off his just legal responsibility and declines to perform his public duty in the way and on the terms which the law prescribes.

The circumstance that the defendants are a railroad corporation does not place them in a more favorable situation. They are created for the express and sole purpose of carrying goods and passengers, and are by law common carriers of goods. They have a practical monopoly of that business on the line of their route, and the public have a peculiar right to insist that they shall perform their duty under the responsibilities which the general rule of law imposes.

It has sometimes been denied that a common carrier can discharge or limit his common law liability, even by express contract. *Gould* v. *Hill*, 2 Hill 623.

As, however, the rule of law which charges the carrier with all losses, except in certain special cases, is introduced for the benefit of the owner of goods, it is not easy to see why he should not be allowed to waive it as in other like cases. *Aliquis renunciare potest juri pro se introducto.*

The principal question raised in this case is one that has been much agitated and discussed in this country and in England. It would be a laborious and not profitable undertaking to state all the authorities and arguments that have been collected on the point. By the ancient law it would seem to be generally conceded that the legal responsibility of a common carrier could not be discharged by a public notice. No innovation upon the common law rule has thus far been introduced in this State by prevailing custom or judicial decision. We are not aware of any change in the condition of business that requires a modification of the old rule of law relating to this subject. We are therefore of opinion that the defendants were not in this case discharged by the notice, from their legal liability as common carriers, and that the instructions of the court on this point were correct.

We do not mean to hold that there are no cases in which the carrier may, by notice, define and qualify his responsibility. It may be quite reasonable that he should insist on proper information as to the value of the article which he carries. This would not seem to be any infringement upon the principle of the an-

cient rule. He must have a right to know what it is that he undertakes to carry, and the amount and extent of his risk. We can see nothing that ought to prevent him from requiring notice of the value of the commodity delivered to him, when from its nature or the shape and condition in which he receives it, he may need the information; nor why he should not insist on being paid in proportion to the value of the goods and the consequent amount of his risk.

*Judgment on the verdict.*