## Rebecca A. McKee v. John Owen and others.

15  115
74  189

*Common carriers of passengers : Liability for money stolen from passenger in room.*
Plaintiff took passage on the steamer of the defendants, and paid her fare, which included her board on the passage, a stateroom and lodging. She was assigned to the room by the proper officer of the boat; and another lady, a stranger to the plaintiff, was afterwards also assigned to the same room. Plaintiff, when she retired to bed, left her dress, in the pocket of which was her portemonnaie, with some personal jewelry and money for her traveling expenses, on an upper unoccupied berth. During the night, while the plaintiff was asleep, the money and jewelry were claimed to have been stolen, but whether by some one from without, or by the other lady within, did not conclusively appear, though the evidence tended to show that it was stolen from without, through a window, which the steward of the boat knew to be broken.

Whether the defendants were liable for the property if stolen, *Quaere?* The court being equally divided in opinion.

CHRISTIANCY J., COOLEY J. concurring, holding the defendants liable as carriers to the same extent as an innkeeper would have been for a similar loss by a guest occupying a room at his inn.

CAMPBELL J., the Ch. J. concurring, denying the liability.

The respective liabilities of carriers and innkeepers fully discussed.

Error to Wayne Circuit.

This was an action brought by plaintiff to recover of the proprietors of the steamboat "City of Cleveland" the value of certain personal property, alleged to have been stolen from her stateroom during a trip from Cleveland to Detroit. It appeared from the evidence that plaintiff took a cabin passage on defendants' boat from Cleveland to Detroit, and paid her fare.

She was assigned to a stateroom about 8 o'clock in the evening; whereupon she went into it, left some of her apparel there, and came out and locked the door.

Soon after, a lady passenger, unknown to the plaintiff, was also assigned to the same stateroom.

The plaintiff, before retiring, called the attention of the stewardess to a broken window, which looked out on the deck. The stewardess then placed a pillow in the broken part.

There were two berths in the stateroom. The foot of

McKee v. Owen.

the upper one could be reached through the window from the outside.

The plaintiff undressed, rolled up her dress — in the pocket of which was her portemonnaie, containing $31.76, and a gold chain, worth $20 — and placed it on the upper berth, near the foot; the stranger sleeping on the inner side of the bed.

Plaintiff, on being awakened during the night, by the wind blowing through the window, arose, found the pillow out of the window, and her dress unrolled and upon the floor.   On moving the curtain, her portemonnaie fell from the edge of the upper berth, and was empty; money and chain being gone.

Plaintiff testified that the stranger could not have taken it without disturbing her.

On the part of the defendants, there was evidence given, tending to show that the boat had a full and competent crew, and that a proper watch was kept during the night; and that the freight was so piled against the window that no person could have committed the theft through the window without detection.

At the close of the trial, the counsel for the plaintiff requested the court to charge the jury as follows:

" 1st.  The defendants are common carriers, and are liable without any proof of negligence, and if the jury find that plaintiff took passage and paid her fare, and that fare included a stateroom, and plaintiff's money was stolen from the stateroom, where she had deposited it by placing it off from her person, in her own dress pocket (her dress being off during the passage), while off her person it is immaterial whether stolen by a person without or within the stateroom, and plaintiff may recover.

2d.  Common carriers are liable for the loss of all money carried by the traveler for necessary or reasonable expenses of the journey, and if they find this amount was

reasonable or necessary, and that it was stolen from the stateroom, she can recover.

3d. The purchase of a ticket for the passage, and the assignment of a stateroom to the plaintiff, was a notification to the person in charge of the boat of the intention of plaintiff to take passage, and this was a constructive delivery to and acceptance by defendants of the property of plaintiff, and plaintiff can recover."

The court refused to charge either of these points, and to such refusal the plaintiff's counsel then and there excepted.

The court then charged the jury, as follows:

"1st. That the defendants are common carriers, and are liable without proof of negligence, but that if the money and chain were retained in the personal possession of plaintiff, in the pocket of her dress, on or off, as in this case, the defendants had no such possession as would make them liable as common carriers.

2d. Common carriers are liable for a loss of a sum of money necessary for the expense of the journey, when carried with, and as a part of baggage; but when carried, as the evidence in this case shows it was carried, if stolen, the carrier is not liable.

3d. The purchasing of a ticket for the passage, and the assignment of a stateroom to plaintiff, was a notification to the person in charge of the boat, of the intention of plaintiff to take passage; but it was not such a constructive delivery to, and acceptance by, the defendants, of the money and chain of the plaintiff, under the facts in this case, as would entitle the plaintiff to recover for it, if stolen from her."

To each of which three charges, the plaintiff's counsel then and there excepted.

The counsel for the plaintiff then requested the court to charge that if the jury find defendants contracted to carry plaintiff from Cleveland to Detroit, the contract

implies a safe conduct for the person, and baggage, and money, to a reasonable amount, for traveling purposes; and, if they find the room was unsafe, and there was not due and reasonable diligence on the part of defendants, that plaintiff is entitled to recover.

The court refused to charge as requested, and plaintiff's counsel excepted to such refusal, but the court did charge:

"4th. If the jury find the defendants contracted to carry plaintiff from Cleveland to Detroit, the contract requires a safe carriage and delivery of the baggage of plaintiff, and a sum of money necessary for the journey, if carried as baggage in the custody of the carrier; but if it was carried, as this case shows it was, it was not in the custody of the carrier so as to entitle plaintiff to recover."

To which charges plaintiff's counsel excepted.

And thereupon, at the request of defendant's counsel, the court charged the jury as follows:

"1st. That if the jury should find from the evidence that defendants were common carriers of passengers and baggage, and that the money and chain were stolen from plaintiff, as alleged, then they must find the further fact, that the plaintiff delivered the money and chain to defendants or their agents, or they should not find defendants liable as common carriers.

2d. That if the jury find, from the evidence, that the plaintiff retained possession of the money and chain upon her person, and did or said nothing by which the defendants or their agents, were informed of any delivery to them of the money and chain, then there was no such delivery to the defendants of the money and chain as to make them liable as common carriers."

The jury found a verdict for defendants.

*H. M. Cheever*, for plaintiff in error.

1. It is admitted that defendants were common carriers;

owners of the steamboat "City of Cleveland," a vessel duly enrolled and licensed for the coasting trade.

No question is made, as we understand, upon the liability of defendants for lost or stolen baggage, delivered to them by a passenger; but it is contended that the property lost in this case was not properly *baggage*, and that there was not such a delivery to defendants as to make them liable.

The liability of the innkeeper and common carrier seems in many respects identical, though varying in extent. — *Story on Bailm.* § 472; 19 *Wend.* 259.

With regard to the custody of goods, their liability is to be regarded identical. Both are insurers of the property or baggage committed to them. — 3 *Hill,* 485; 10 *Barb.* 612; 4 *Sandf. S. Ct.* 136; 19 *Geo.* 203; 29 *N. Y.* 115; 31 *Maine,* 478; 8 *Blackf.* 535; 21 *Wend.* 282; 9 *Pick.* 280; *Jones on Bailm.* 107.

The money was "reasonable in amount for traveling purposes," and the chain was "baggage," or part of the. wearing apparel.

Baggage is held to be such articles of personal convenience or necessity as are carried for personal use of the passenger. It has been held to include books, a gun, fishing tackle, a watch, a pair of pistols, etc. — 22 *Ill.* 281; 2 *Harris,* 129; 10 *Ohio,* 145.

So, also, it includes personal jewelry. — 3 *Barr.* 451; 4 *Bosw.* 226.

2. There was a sufficient delivery to defendants to make them liable.

The court erred both in charging that in this case there was no delivery to, or possession by defendants, as well as in refusing to charge as requested — that, if stolen from without or within, was immaterial as to defendant's liability.

*a.* There was, we contend, such a delivery to defendants as the law required; and the property was sufficiently in

the possession of defendants, so as to make them liable in this· case.

The case shows that the cabin fare included a stateroom, and was more than other passage; that plaintiff paid this fare, and was assigned a stateroom, and that she placed the money and chain in the stateroom, off from her person, and that it was taken from such place.

No *actual* delivery is necessary; no *special* custody required. Rigorous as this rule may seem, public policy requires it. Such delivery is sufficient as to innkeepers. — 27 *Miss.* 658; 2 *Met.* 439; 14 *Johns.* 175; 5 *Barb.* 560; *Story on Bailm.* § 479.

So if money or baggage is stolen from the room of a guest, they are liable. — 2 *Barn. and Adol.* 803; 7 *Cush.* 417; 1 *Yates*, 35; 6 *E. L. & Eq.* 349.

Nor are they released from liability though the guest has the key of his room, or has left his door open. — 19 *Wend.* 259.

Now, we contend that when defendants demanded and received a fare for the use of the stateroom, by such demand, and receiving such fare and the assignment of the room to plaintiff, they assumed an increased responsibility; and their contract implied that the room should be safe for sleeping, and the deposit of such baggage as travelers usually carry in their hands, and money to a reasonable amount for traveling purposes; and that they consented that plaintiff should so regard it, and the placing of such baggage and money in such stateroom, off from the person of said plaintiff, was a sufficient constructive delivery of the same to defendants. It was saying in effect: that is the customary place of depositing such baggage, and satisfactory to us. — 19 *Wend.* 249, *before cited;* 7 *E. L. & Eq.* 519; 20 *Conn.* 354.

*b.* It was error to refuse to charge that "if stolen from without or within, defendants were equally liable."

They are responsible for loss by theft, whether committed by strangers or their own servants. — *Story on Bailm.* §§ 488, 507*a;* 10 *Johns.* 1; 7 *Bing.* 217; 2 *Wend.* 327; 327; 6 *Id.* 335.

*c.* The carrier is liable for money carried by the passenger for traveling purposes; and it need not be carried in a trunk. It may be carried wherever most convenient, whether in trunk, bag, box, satchel or bundle, and may be most of the time about the person of the traveler; and that though carried about the person for convenience or from necessity most of the time, when deposited in the stateroom ( as this case shows ), off the person, it was a sufficient delivery to hold defendants liable, — 3 *Gibbs,* ( *Mich.* ) 51; 25 *Geo.* 61.

We submit the judgment should be reversed, and a new trial granted.

*Moore & Griffin,* for defendants in error.

Defendants are not liable as common carriers, for the reason that the evidence shows that the articles alleged to have been lost were, at the time of the alleged loss, in the exclusive custody of the plaintiff, and were not delivered to, and accepted by defendants.

In this and analogous cases, the law recognizes two modes of delivery.

*a.* Actual delivery.

*b.* Constructive delivery.

Actual delivery is a delivery in such a manner as brings home to the party sought to be charged, personal knowledge that the property for which he is holden responsible, is within his control or custody, at the place at which he accepts it, in the capacity in which he is sought to be charged; or, in case of small articles, a transfer from one person into the hands or tangible possession of another.

Constructive delivery is a delivery in accordance with

15 Mich. — i.

some usage or custom adopted by the parties sought to be charged, and known and recognized by the public as such.

That delivery and acceptance is essential to bind the carrier, is an elementary principle of law. — *Edwards on Bailm.* 446; *Angell on Car.* §§ 129, 140, 143; 1 *Pars. on Con.* 650.

In the case . at bar, it is not asserted that there was any actual delivery of the articles, or that the possession of them by plaintiff was known to defendants.

But it is claimed that there was somehow a constructive delivery.

*a.* If the above definition of a constructive delivery is correct, the evidence fails to show any usage or custom adopted by the defendants and known to the public, of a nature to bind them in this case.

*b.* From the sixth assignment of error, it would seem that counsel for plaintiff contends that the purchase of a ticket, and the assignment of a stateroom, was a constructive delivery to, and an acceptance by the defendants of the property of plaintiffs.

In and of itself, this latter proposition is so anomalous, that it does not seem to admit of discussion. We can see neither any principle, authority, nor even *dicta*, which seems to support it.

What is the liability of a common carrier of passengers ?

The law is now well settled, that he is liable for the baggage of the passenger entrusted to his custody. And this without additional compensation. The passenger fare, in contemplation of law, covers and includes a compensation for the conveyance of his baggage. The care of the baggage, when in the custody of the carrier, is part of the service for which fare is paid. — *Story on Bailm.* §§ 498 – 9, 595; *Edwards on Bailm.* 580.

But to bind the carrier, there must be a delivery of

the baggage in the same manner as of other goods. It must be entrusted to the custody of the carrier, and not retained in the possession and under the control of the passenger. — *Story on Bailm.* §·533; *Edwards on Bailm.* 451; *Parson's Mer. L.* 226; *Angell on Car.* §§ 113, 140.

But the articles alleged to have been lost were not baggage, even if they could be so considered if carried in a trunk. They were not carried as baggage in this case, but on the person. — *Angell on Car.* § 115; *Parson's Mer. L.* 225, *and notes.*

The following authorities bear a strong analogy to the case at bar — 1 *Car. and P.* 638; 8 *Id.* 207; 9 *Lou.* 80; 3 *Barb.* 388; 6 *Cow.* 757; 7 *Hill*, 47.

Common carriers are not innkeepers, as was sought to be maintained in the court below, and is probably contemplated by the sixth assignment of error.

Both belong to the class of bailments termed *Locatio.* Innkeepers are a subdivision under the head *Locatio operis faciendi.* Common carriers under the head *Locatio operis mercium vehendarum.* The chief business of the innkeeper is entertainment. That of the common carrier, transportation.

The liability having once *attached*, the result of the authorities, we think, establishes the rule that the liability of the one is co-extensive with that of the other. It seems, upon principle, there can be no good reason assigned why this should not be so.

But the same acts on the part of a stranger, will not charge a common carrier as will render liable an innkeeper. The innkeeper is liable for whatever is deposited in his house by the guest as such. The fact that they are *infra hospitium*, is sufficient to charge him. This is stated to be the general rule by Mr. Edwards.— *Edwards on Bailm.* 398 – 9.

But no such rule applies to a common carrier. He does not become liable as carrier, from the mere fact that the goods are transported by him.— *Pars. Mer. L.* 226.

The demand for increased accommodations has rendered it expedient and profitable to provide suitable rooms for passengers to occupy; but this is incidental to the principal contract, and can .not and ought not to enhance their liability, or add the liability of innkeeper to that of common carrier.

CHRISTIANCY J.

The defendants below (defendants in error), proprietors of the steamboat "City of Cleveland," were common carriers of goods and passengers between Detroit and Cleveland. On the evening of the 17th of April, 1865, the plaintiff took a cabin passage on this boat at Cleveland for Detroit, and paid her fare ($3.50), which included passage, breakfast and a stateroom and, of course, ordinary traveling baggage, if she had it. A stateroom (letter "H") was assigned to her at the time of paying her fare, and was shown to her by the stewardess about 8 o'clock in the evening, when she went in and left her hat, muff, cloak and basket containing some wearing apparel, and then came out and locked the door. Shortly after this, another lady, a stranger to the plaintiff, was assigned to the same room. Plaintiff gave her the key and went to the door of the stateroom, while the stranger went in and left her apparel.

At this time plaintiff first noticed that the window looking out on the deck was broken; and she called the stewardess, showed her the window and, as she says, asked the stewardess if it was safe, but the stewardess says she spoke only of the wind, and not about its being safe. The stewardess took a pillow about fourteen inches wide and sixteen inches long, and placed it in the window. The steward knew that it was broken some days before, though less than it was now found to be. The stewardess, at the time the plaintiff called her to see about the window, said she heard glass breaking during the evening while she was in the cabin.

MCKEE v. OWEN.

There were two berths or beds in the stateroom. The foot of the upper berth could be reached through the window from the outside.

The plaintiff undressed; rolled up her dress, in the pocket of which was her portemonnaie containing $31.76 and a gold chain worth $20, and placed it on the upper berth near the foot; she and the stranger occupying the lower berth together, the stranger sleeping on the back side of the bed. About 2 o'clock in the morning, the plaintiff was awakened by the wind blowing in the window. She arose, found the pillow out of the window, her dress unrolled and upon the floor, and her portemonnaie fell from the edge of the upper berth as she moved the curtain, and was empty; money and chain being gone. Plaintiff testifies that she did not sleep sound, that the stranger lady could not have taken the money and chain without awakening her. The captain was at once notified, but the money and chain were not found.

On the part of defendants there was evidence tending to show that the boat had a full and competent crew, that a proper watch was kept during the night — the watchman being able to see the window on the outside every five or ten minutes; that the freight was so piled against the window that it would have been very difficult for any person to have committed the theft through the window from the outside, and that this could not have been done without detection.

Many exceptions were taken on the trial; one to the admission of evidence and several to refusals to charge and to the charge as given.

The court charged in substance that though the defendants would be liable as common carriers, without proof of negligence, for baggage actually delivered to them, yet "if the money and chain were retained in the personal possession of the plaintiff, in the pocket of her dress, on or off, as shown in the present case, the defendants had

no such possession as would render them liable as common carriers. That as common carriers they would be liable for the loss of a sum of money necessary for the expenses of the journey, when carried with, and as a part of, the passenger's baggage; but when carried, as the evidence in this case shows it was carried, if stolen, the carrier is not liable."

The court refused to charge in substance that the defendants would be liable for the theft if the jury should find that the room was unsafe, and that there was not due and reasonable diligence on the part of the defendants; but did charge, in answer to this request, that the defendants would not be thus liable, because as shown by the evidence, the money and property were not in the custody of the carriers, so as to entitle the plaintiff to recover.

The above charge and refusal cover the whole merits of the case so far as relates to the cause of action, and it will be unnecessary to notice the others which embrace the same questions in a different form.

The question involved in this case has been spoken of as a new one, though it has not seemed to me, in the examination I have been able to make of it, that it involved any new principle, or any principle not already well settled in the law of common carriers. As it is, however, a case of some importance as respects the principle involved, and the facts upon which it arises are somewhat different from those in any adjudged case which has come to my knowledge, I think it proper to consider it somewhat at length, though I think it presents no difficulties which may not be readily solved by a resort to fundamental principles; the reasons and analogies of the law, fixing the liability of carriers and innkeepers, so far as the liabilities of the two are analogous.

As a preliminary point, I think there can be no reasonable doubt, that the gold chain, being an article of

personal ornament, and so much of the money as should be found reasonable for the plaintiff's journey (which every passenger must be supposed to carry, either in his clothing or his baggage), were properly carried by the plaintiff about her person, and that she is chargeable with no imprudence or fault in thus carrying them, instead of having them placed in her baggage and delivered into the hands of the carriers.   And admitting, as the court below charged, that if thus carried as baggage the defendants would have been liable, it by no means necessarily follows that they may not be also liable for the theft shown in the present case though carried in the pocket of her dress.   She does not appear to have had a trunk nor other baggage in which the money and chain could have been properly placed.

As to money carried with, and as a part of the baggage, the weight of authority is in favor of holding the carrier responsible for it when thus carried; but the propriety of thus carrying money even for expenses has been questioned by the courts, and has not been uniformly admitted.   See on the one side *Weed v. Sch. & Sar. R. R. Co.;* 19 *Wend.* 534; *Cole v. Goodwin, Id.* 251; *Orange County Bank v. Brown,* 9 *Id.* 85; *Jordan v. Fall River R. R.,* 5 *Cush.* 69; *Bomar v. Maxwell,* 9 *Humph.* 622; *Johnson v. Stone,* 11 *Id.* 419.   On the other, *Hawkins v. Hoffman,* 6 *Hill,* 586; and *Davis v. Mich. S. & N. I. R. R. Co.* 22 *Ill.* 278.   In the latter case it was intimated that a trunk is not a proper place to carry money for traveling expenses unless it be in gold and silver.   In no case has it yet been held that it was improper or imprudent for a passenger to carry his money for such expenses in his pocket; nor will any court, I think, be likely to adopt so unreasonable a rule under the modern practice of checking baggage, which seems to have become almost universal, both by railroad and steamboat, by which it is rendered practically inaccessible to the

passenger on the way, and he is compelled to carry, at least, a large part of his traveling expenses on his person; and the same reasoning will apply to articles of jewelry and personal ornament which a passenger may have occasion to use on the way. And though it may be held optional with the traveler to carry the money for his traveling expenses either in his baggage or in his pocket, I can not resist the conviction that the latter is the most proper and prudent course, as well as most in accordance with general usage, and better for 'the interests of the carrier, even though he should be held liable for a loss by theft, like that in the present case.

It is clear that the defendants could not be held liable as carriers generally for money stolen from the persons of passengers on their boat. Passengers by steamer while up and awake, or when or where they ought, and are expected to be awake, like passengers by railroad or stage coach, must be expected to rely upon their own vigilance for protection against larceny from their persons; and it is well understood by all, that in such cases the property carried upon the persons of passengers is in their own keeping. And it would be equally clear that if a passenger while in a general cabin or elsewhere about the boat in any place (or at a time), not specially intended or designated for sleeping (but where the other passengers are indiscriminately admitted, or passing and repassing), suffer himself to fall asleep, he does so at his own peril. · Because, having intelligence and a will of his own, and moving about from point to point at his own pleasure and choosing his own associates, he is generally fully capable of protecting himself; and no degree of vigilance on the part of the carriers could afford him that protection, if he will neglect to make use of his own faculties for that purpose, or allow himself to fall asleep at an improper place or time, or carelessly put himself in contact with improper persons.

McKEE v. OWEN.

But when a steamer is fitted up with regular sleeping apartments, and all the appliances for boarding and lodging her passengers as at an inn, and the owners or managers hold themselves out to the traveling public as furnishing such accommodations, and by these superior advantages induce travelers (as they naturally must) to prefer this to the less comfortable mode of traveling by railroads and stage coaches, or even by vessels without such accommodations, when they receive the fare of a passenger, which includes not only his passage but his board and sleeping room and bed, and when that room is assigned to him and he retires to it for the night, the whole transaction, it seems to me, carries with it an invitation to make use of the room and the bed for the purposes and in the manner for which they were obviously designed; in other words to lay aside his clothing and to go to sleep there. And unless he is expected to sleep with his eyes open, and his faculties upon the alert, he is invited to lay aside all the vigilance he would be expected to exercise when awake, and to trust himself and his clothing and such money and property as he may have about him, and, as it is usual for passengers to carry in their clothing, to the protection afforded by the room, and the vigilance to be exercised by those in charge of the boat. And the latter must, in the absence of any usage, request or notice, to the contrary, be held to assent that the passenger shall leave such clothing and contents at any convenient place in the room, instead of having to call the steward, clerk or other officer or servant of the boat, to take it into his actual or manual custody — a proceeding which (as it must take place after the passenger is undressed) would be somewhat awkward in the case of a lady passenger at least. And, having been thus invited to rely upon the protection of his room, and their vigilance instead of his own, the invitation, it seems to me, carries with it an assurance that they will be responsible

in the meantime for all losses of such clothing and contents, from which he might by his own vigilance, have protected himself when up and awake. If they do not thereby assume this responsibility, then it is no "figure of speech," but a literal truth, to say that by their invitation the passenger has been *lulled into a false security.*

I express no opinion upon the question whether the liability of the defendants in respect to the loss of such money and property in other modes or from other causes would be commensurate or identical with that of an innkeeper. The facts of this case do not call for an opinion upon a question as broad as this. But so far as relates to the facts of this case, the loss of this money and chain in the manner and under the circumstances the evidence tended to prove, I think the assurance held out by the defendants to the plaintiff, is the same as that held out by the innkeeper to a guest occupying a bedroom at his inn; and that the responsibility of the defendants for the loss of the chain and so much of the money as should be found reasonable for the expenses of the journey, is the same as that of the innkeeper for a loss occasioned in the same way; and that the responsibility rests upon precisely the *same,* and *all* the *same reasons* in both cases; and this, whether the money and chain were stolen through the window from without, or by the stranger lady who had been assigned to, and occupied the room with the plaintiff, without any choice or agency of her's, but by the act of the proper authorities of the boat. Had the lady been a traveling companion of the plaintiff, the case, as to this point, would have been different, and so, probably, if she had been assigned to the same room at the plaintiff's request.

The officers of the boat, in assigning the same room to more than one passenger, must, I think, be understood virtually to say to each: "If you choose your own roommate or companion, you exercise your own judgment, and

run your own risk that he shall not steal from you. But if you leave the choice to our judgment, we will be responsible for its exercise, and for the consequences, if we select a thief and he shall steal your purse." This is substantially the rule as to innkeepers. — *Calye's case,* 8 *Coke R.* 32; *Bacon's Abr. Inns & Innkeepers C.* 4; *Comyn's Dig. Action on the Case for negligence, B.* 2; and whether the theft was committed by some person on the boat from without, or the other lady within the room, every ground and reason upon which the law holds the innkeeper liable for a like theft applies with equal force to the carriers in the present case. Both are recognized as public servants. The liability of each, instead of resting upon contract, is imposed by the law from motives of public policy: the necessity of trusting such persons and their servants, the danger of combination or collusion with thieves and robbers, their peculiar opportunities for concealment, and facilities for avoiding detection, and the consequent difficulty of proving negligence or fraud, should they be guilty of either. See as to carriers, *Coggs v. Bernard,* 2 *Ld. Raymond,* 909, 918; *Orange County Bank v. Brown,* 9 *Wend.* 114; *Jones on Bailm.* 103 – 107; *Story on Bailm.* 419, 491; *Merritt v. Earle,* 29 *N. Y.* 115. As to innkeepers, *Jones on Bailm.* 95, 96; *Story on Bailm. sec.* 471; 2 *Kent's Com.* (*3d ed.*) 592 to 594; *Mason v. Thompson,* 9 *Pick.* 280; *Shaw v. Berry,* 31 *Maine,* 478; *Carter v. Hobbs,* 12 *Mich.* 52; *Smith's Lead. Ca.,* notes to *Calye's cases.*

Their obligations to receive passengers or travelers for whom they have room is the same in the one case as in the other, and both have the like means of judging of the characters of those they admit as passengers or guests; and the carrier has at least an equal right to exclude improper characters. As to innkeepers, see *Rex v. Ivens,* 7 *C. & P.* 213; *Howell v. Jackson,* 6 *C. & P.* 723; *Kent v. Shuckard,* 2 *B. & Ad.* 803. As to carriers of passengers, *Ansell v. Waterhouse,* 2 *Chitty R.* 1; *Jencks v. Coleman,* 2 *Sumner* (*C. C.*) *R.* 221; *Bennett v. Dutton,* 10 *N.*

*H. Rep.* 481; *Markham v. Brown*, 8 *Id.* 523; *Commonwealth v. Power*, 7 *Metc.* 596; *Angell on Carriers*, 525. If the innkeeper possesses a certain degree of control over his guests and their conduct, the officers of a steamboat have at least an equal control over their passengers, who are more completely in their power, and compelled to rely more unreservedly upon their vigilance and good faith.

As the liability of both rests solely upon grounds of public policy, it cannot properly be made to turn in either case upon any narrow technical or arbitrary rule. The common law upon this subject does not consist of arbitrary rules, but of principles founded upon reason and enlightened views of what is required for the public welfare — principles which are not to be confined in their application to the facts involved in the few cases heretofore decided, but are to be equally applied to new cases embracing different facts, resting upon the same principles, as the exigences of a progressive age and new modes of travel and commercial activity may call them forth. And in all such cases, where all the reasons are the same, the law should be and is the same.

Until the case of *Kent v. Shuckard*, 2 *B. & Ad.* 803 (in the year 1831), there seems to have been no reported case in England which had held an innkeeper to be liable for *money* of a guest stolen at an inn; and this fact was urged by counsel to show that innkeepers were not thus liable. To this Lord Tenterden, in giving his judgment, replied: "There are many cases where *money* has been recovered in an action against carriers, who, like innkeepers, are liable by the customs of the realm. And I can not see any distinction in this respect between an innkeeper and a carrier. The principle on which the liability of the innkeeper * * * for the loss of the goods of his guests is founded, is, both by the civil and the common law, to compel the innkeeper to take care that no improper person be admitted into his house, and to prevent

collusion between him and such persons." Courts and text writers have alike treated the liability as analogous and as founded upon the same reasons, and have habitually illustrated the one by reference to the other. — See *Richmond v. Smith,* 8 *B. & Cress.* 9; *Cole v. Goodwin,* 19 *Wend.* 259; *Grinnell v. Cook,* 3 *Hill,* 485; *Smith's Lead. Cases, supra; Angell on Carriers,* §§ 524, 525.

In *Cohen v. Frost,* decided by the Superior Court of New York in 1853 (2 *Duer,* 341), a passenger on a passenger ship had taken his trunk into the steerage with him, and kept it for some time under his bed, and then tied it with ropes to the berth in which he slept. During a storm, the ropes which fastened the trunk were cut, and it was stolen. The court say "the case is not to be distinguished from that of a guest at an inn." But the court, by a misapprehension, as it seems to me, of the case of *Burgess v. Clements,* 4 *M. & S.* 306, conclude that the innkeeper would not be liable for the loss in such a case, and therefore that the carrier was not liable. In the case of *Burgess v. Clements,* upon which this opinion purports to rest, a guest at an inn, not satisfied with having a bedroom, and free access to the traveler's room, called for a third room, "for the purpose of exposing in it his wares to view, and for introducing a number of persons over whom the innkeeper could have no control." He seems to have used the room rather as a kind of shop for showing his goods to customers; "and thus (said Lord Ellenborough, in delivering his opinion), for a purpose wholly alien from the ordinary purpose of an inn, which is *adhospitandos homines.*" Bayley J. places his opinion upon the same ground. It seems to me manifest, therefore, that the court, in *Cohen v. Frost,* misapprehended the ground and extent of the decision in *Burgess v. Clements,* and that it would by no means absolve an innkeeper from liability for a loss like that in *Cohen v. Frost.*

By the civil law, the liability of ship masters, innkeepers and stable keepers, was identical. — *Story Bailm.* § 462,

*and authorities cited.* I am aware that Judge Story, in his Commentaries (§ 472), intimated the opinion that innkeepers are not responsible as insurers to the same extent as common carriers — that the former might absolve themselves from liability by showing that there has been no negligence. But this has not generally been recognized, and I think the law, in this country, at least, may be considered as settled that both are equally insurers of the property intrusted to their care against all losses not occasioned by inevitable accident or the public enemies. — See *Mason v. Thompson,* 9 *Pick.* 280; *Grinnell v. Cook,* 3 *Hill,* 485; *Shaw v. Berry,* 31 *Maine,* 478.

As to the objection of a want of delivery to the carrier, upon which the case was made to turn in the court below, I have already indicated my opinion that the evidence tended to show a clear case of constructive delivery, and a sufficient notice to and acceptance by the carriers. If it was a usual and prudent course (as I think it was), for the plaintiff to carry the money and chain in the pocket of her dress, instead of putting it into a trunk, and delivering it to the carriers as baggage, then no notice to the carriers was necessary of the contents of her pockets, more than would have been required of the contents of a trunk, had the money and chain been placed in a trunk. And as she left her clothing where they must have expected, and be held to have known it would be left, in her sleeping room, there could be no occasion for giving them personal notice, when about to disrobe, that she intended to leave it, or when she had undressed, that she had left it there. Such a notice would have been simply ludicrous. In *Van Horn v. Kermit,* 4 *E. D. Smith,* ( *N. Y. Com. Pl.* ) 454, the doctrine that to hold ship owners liable for baggage, it must be placed beyond the passenger's reach, in the special charge of the officers of the ship, is expressly denied, because the passenger must necessarily require access to it, and unless particularly enjoined

to deposit it in some other place on ship board, there is no place more appropriate than the stateroom or cabin assigned to him for use during the voyage.

In Richards v. London, Brighton and South Coast R. W. Co. 7 Com. Bench, 839, where it was held that the liability of the company for the dressing case of a lady passenger, continued until the porter employed by the company for that purpose should deliver it at the carriage in which she rode off at the terminus of the journey, it was expressly held, also, that "the fact of the dressing case having been placed under the seat of the (railway) carriage, and so under the more immediate control and inspection of the passenger, makes no difference" as to the carrier's liability.

The case of Tower v. Utica & Schn. R. R. Co. 7 Hill, 47, cited on the argument, has no bearing upon the present question. The plaintiff, who had been a passenger upon a railroad car, went off and left the car (ceasing to be a passenger), and left his overcoat upon the seat he had occupied. When he thus left the car, the carriers had a right to suppose he had taken his clothing with him, and that their care was at an end, if the coat could, before that, have been considered in their custody.

Under the facts which the evidence in the present case tended to prove, I think the money (or rather so much of it as should be found reasonable for the journey) and the chain, and the dress in the pocket of which it was contained, were in the custody of the defendants as carriers, and that they were liable as such for the theft committed during the night, to the same extent as if such money and chain had been contained in a trunk actually delivered to the defendants, and lost or stolen from them. Nor do I think this is any extension of the generally recognized liability of carriers, but simply applying the well settled principles of adjudged cases to a new case clearly within them. I see no force in the objection urged

at the bar that the carriers should not be held liable, because they could not enforce their lien for money and articles carried upon the person of a passenger. The same objection might be made with the same force against the liability of an innkeeper for a similar loss, and yet it is not denied that an innkeeper would have been liable for this loss. Nor do I perceive any great force in the objection that no case is found where carriers have been held liable for money or property stolen or lost under the circumstances presented by this case. This may result as well from the fact that the liability has not been disputed, as from its non-recognition, or from the fact that such losses have not been very common, or have been paid or compromised. There was evidence in this case of the compromise of such cases occurring on this very boat, and a compromise was offered to the plaintiff for *this* loss.

But it is further urged that the liability of a carrier must be continuous from the time the property is delivered into his custody to the end of the transit, while in the present case it would be frequently changing, appearing and disappearing by turns, as the clothes of the passenger were on or off, etc.

I can see no legal foundation for this objection. It is not true that the carrier's liability can not exist without being continuous for the whole trip or transit. In the case of ordinary baggage, it may cease and be revived, appear and disappear any number of times during a trip or voyage. A trunk actually delivered into the hands of the carriers may be often required by the passenger on the way, and when he obtains access to it, has it in his own hands or opens it to take out or put in articles, it is in his own custody, *pro hac vice*, and for a loss occurring at such moments, the carrier would not ordinarily be responsible; and yet the moment it goes back into the custody of the carrier, his responsibility revives. And so in the present case, while the plaintiff was up, with the

clothing on her person, it was in her own custody; but when laid aside in her room, while she slept, it was, as I have endeavored to show, in the custody of the defendants as carriers.

It was also objected that if the defendants are to be held liable to the same extent as innkeepers, the declaration should have charged them as innkeepers. But though the defendants are liable to the same extent as innkeepers, they are liable in the capacity of carriers, and not in that of innkeepers. Their obligation is not like that of the innkeeper, simply one of *custody* and *safe keeping*. Carriage, *transportation* is the principal object both of the passenger and the carrier, and the responsibility for the safety of the property in transitu, is imposed by the law as in all other cases of the carrier's liability, as an incident to that principal object. The obligation relates to the *mode* of *carrying*. The defendants are therefore properly sued as carriers, not as innkeepers.

The hardship of holding carriers responsible as insurers, without and irrespective of negligence, has sometimes been made a subject of complaint; and in particular instances it may operate with some severity. But in my opinion, the public interest and common good require the strict observance of the general rule; and, upon the whole, the hardships are more apparent than real, as carriers have it always in their power, like other insurers, to demand a premium in proportion to the hazards of the employment, which we must presume they have, in cases like the present, received in the amount of the fare which has been paid. — *Hollister v. Nowlen*, 19 *Wend.* 234. But the province of the courts is to declare, and not to make the law; and as I regard the general rule to be well settled, the hardship, if any, is, I think, one for the legislature, not for the courts to relieve.

But the court also charged that the defendants would not be liable for the loss, if the jury should find that the room

15 Mich. — K.

was unsafe, and that there was not due and reasonable diligence on the part of the defendants; for the reason that the property was not in the custody of the carriers. In my view of the case, this question does not arise, and I shall not discuss it. But admitting the premises, I am by no means satisfied that the conclusion drawn by the court would follow.

My reasoning upon the main question in the case sufficiently indicates my opinion against the admissibility of the evidence offered to show that it was usual for occupants of staterooms to leave their windows open during the night, which, however, when given, only tended to show that in warm weather (which probably did not prevail in April), some left them open and some closed them. If other passengers chose to disregard the means of safety in warm weather, it is difficult to see why the plaintiff should be denied the right of resorting to those means, especially when the weather was not likely to be warm enough to induce even others to open their windows. This error, however, was of little, if any, importance in this case; because under the charge given upon the main question in the case, the plaintiff could not possibly have recovered, though this evidence had been excluded; and if the charge upon the main question had been correct, it would have cured the error of its admission.

When the foregoing opinion was written, I was not aware of the decision in *Mudgett v. Bay State Steamboat Co.* 1 *Daly* (*N. Y. Com. Pleas*), 151, which has just been received here.

This was a case in which the plaintiff sued to recover the value of a valise (and its contents), which he, as a passenger upon the defendants' steamboat, had deposited in his stateroom, the key of which had been given him by the clerk. He had left the room locked, and the valise was stolen from it. The defendants were held liable for the loss; and their liability is placed on the same grounds,

McKEE v. OWEN.

and declared to be the same as that of an innkeeper. This is a well reasoned case. It fully sustains the views I have expressed, and goes much further than is necessary to sustain the liability of the defendants in the present case.

I think the charge of the court was erroneous, and that the judgment should be reversed, with costs, and a new trial granted.

Cooley J. concurred.

Campbell J.

The only important question in this case is, whether a steamboat owner is liable for articles carried about upon the person of a passenger, in her pockets, and which she professes to have had stolen from her in her stateroom, which she occupied with another passenger, to whom it was allotted with her.

It is not claimed by any one that there is any authority which covers such a case, and, in the absence of some such decision, it seems to me we should not be justified in importing new liabilities into contracts for the carriage of passengers. If we could imagine that a person had never been, or pretended to have been, robbed in a cabin or stateroom before, we might perhaps suppose that in settling the law this contingency had been overlooked; but, inasmuch as this can not be regarded as an event without numerous precedents, the fact that the decisions thus far made do not sanction the imposition of such a liability, furnishes an almost irresistible argument against enlarging the responsibilities of such carriers.

It is very well known that, until a recent period, there was no such thing as a common carrier's liability attached to the carriage of passengers, so as to cover their baggage, and that a separate contract was made

for that as freight, in order to hold the carrier. And it is very well settled now that the only thing which passenger carriers are liable for, as common carriers, is the same baggage, which is regarded by usage as covered by the passage money, and which is in its nature nothing more nor less than freight accompanying the traveler. *Ingalls v. Bills,* 9 *Metc.* 1; *Hollister v. Nowlen,* 19 *Wend.* 236; *Camden and A. Railroad Co. v. Burke,* 13 *Id.* 626; *Boyce v. Anderson,* 2 *Pet.* 150; *Stokes v. Saltonstall,* 13 *Id.* 181; *Angell on Carriers,* § 521; *Story on Bailm.* § 390. And, while it is recognized by the text writers that attempts have been made from time to time to enlarge the liability of passenger carriers, it. is also agreed that the support of such a doctrine has been uniformly resisted. *Angell on Carriers,* § 522; *Story on Bailm.* § 590; *Boyce v. Anderson,* 2 *Pet.* 150. And it is a matter of familiar knowledge, that, while many acts have been passed limiting the liabilities of carriers by sea and land, there has been no attempt in any direction to increase them. In the case last cited, it was said by Chief Justice Marshall: "The law applicable to common carriers is one of great rigor. Though to the extent to which it has been carried, and in the cases to which it has been applied, we admit its necessity and policy, we do not think it ought to be carried further, or applied to new cases."— *P.* 153. In confining themselves to the settled law, the courts have, it seems to me, done wisely. To bring new cases within the category of absolute liability for everything except inevitable accident, or the assaults of public enemies, would be to break down all legal barriers. For no one can deny that there are many employments and avocations, wherein there is as much opportunity for fraudulent combination as in this species of bailments. The liability laid by the civil law upon carriers and innkeepers did not purport to depend upon

their obligation to receive persons and property. It is expressly stated by the digest that they have no reason to complain of the rule, because they are *not* bound to receive any against their will; and that the rule is established, because they have so many opportunities for combining with thieves. *Story on Bailm.* § 464. It is certainly difficult to see how a common carrier has greater opportunities for embezzlement, or collusion with thieves, than a private carrier, or a warehouseman, or any other bailee of valuables. Nor does there seem to be any reason for supposing that an innkeeper will rob transient guests, rather than boarders. If the rule were to be framed now, for the first time, I can not persuade myself that any legislative body would assume that the two classes of innkeepers and common carriers required this extreme and exceptional treatment. I think that the rule which singled them out must be regarded as strictly confined to its common law force, and that courts are not authorized to extend it.

Such, at least, has always been understood to be the rule in regard to passengers. The passenger and his baggage generally travel together. If a coach is attacked and robbed by highwaymen, the carrier must pay for the baggage, but it was never supposed he was responsible for what was on the persons of the passengers. Yet in such a case he would certainly be as able to protect the one as the other. The only principle holding him in the one case, and discharging him in the other, is that the baggage is freight in his custody, and he is bound to respond for freight, and for nothing else.

It is decided also, that the property must be delivered in some way into the custody of the carrier, and that if it is retained by the owner under his own supervision the carrier is not responsible. *Brind v. Dale,* 8 *C. & P.* 207; *Tower v. Utica and Schenectady R. R. Co.* 7 *Hill* 47; *Cohen v. Hume,* 1 *McCord,* 439.

MᶜKᴇᴇ v. Oᴡᴇɴ.

In both of these American cases the articles lost were .
outer garments, and such as the carriers might have
been compelled to take and care for as baggage, if de-
livered to them.

The course of decision as to what constitutes bag-
gage, is of some value in throwing light on this sub-
ject.   It has now become settled, by a predominance of
authority, that a reasonable sum of money for traveling
expenses, and any articles of daily personal use and con-
venience, may be recovered for as baggage, if contained
in the ordinary luggage, whether they are articles usu-
ally kept on the person or not.   But this ˙doctrine was
long disputed upon the specific ground that the carrier
could not fairly expect to be held liable for articles
which are usually kept upon the person,· as he could
not suppose ·they would be put among baggage.

In *Hawkins v. Hoffman*, 6 *Hill*, 586, where the doc-
trine of implied liability for luggage is fully discussed
and maintained, *Bronson J.* says that "this implied
undertaking has never been extended beyond ordinary
baggage, or such things as a traveler usually carries
with him for his personal convenience in the journey.
It neither includes money nor merchandise.   *Orange Co.
Bank v. Brown*, 9 *Wend.* 85 ; *Pardee v. Drew*, 25 *Id.*
459.   It was suggested in the first case that money to
pay traveling expenses might perhaps be included.   But
that may, I think, be doubted.   *Men usually carry
money to pay traveling expenses about their persons, and
not in their trunks or boxes ; and no contract can be
implied beyond such things as are usually carried as
baggage.*"   *   *   *   "An agreement to carry ordinary
baggage may well be implied from the usual course of
business ; but the implication cannot be extended a single
step beyond such things as the traveler usually has with
him as a part of his luggage."   In˙ *Merrill v. Grinnell*,
30 *N. Y.* 594, the Court of Appeals reaffirmed the

doctrine that the liability for luggage was the same as for freight, but held that it was not so unusual for passengers to carry their expense money in their trunks as to make it improper when so carried, to include it in the baggage; and they speak of it as *a hardship to compel a passenger to keep it about his person*, as he would be compelled to do, if it were not treated as baggage, for which carriers in possession are answerable.

The view taken in both these decisions is clear, that for articles upon his person the passenger must answer himself. And I am unable to see any other rule which is not full of difficulty. It is one of the first principles of the law of bailments, that a carrier may retain any baggage for passage money. It is said to have been formerly supposed that he might detain the passenger also, but this absurd idea came from a *dictum* which is properly regarded as preposterous. *Ang. on Carriers*, § 375, *note* 5. It is very plain that no such lien can be enforced by either searching or stripping a passenger; and there is no lawful method of reaching what has never been in the carrier's custody.

It was claimed on the argument that the liability of carriers and innkeepers was put by the courts on the same footing, and therefore that the same rules must apply to both. It is undoubtedly true that many judges have used this resemblance by way of illustration, and some, misled by analogy, have spoken of the two as identical. But it is not maintainable as matter of law that both are held to the same relative liabilities; and, if they were, it would not follow that all property which is with the traveler *infra hospitium* in an inn, would be regarded as having come into the hands of a carrier, who is transporting a passenger who retains possession of it. It has never been held that every thing on board is in the carrier's custody. All that can be said by way of classifying these callings is that the law has seen fit to

impose on these two classes of bailees more rigorous liabilities than it attaches to others. The common carrier is liable at all events (except as to enemies or inevitable accident) where he is liable at all. The innkeeper is not liable according to any adjudged case for robbery or other violence from without, or fire. *Calye's case*— 8 *Co.* 32— (1 *Smith Lead. Cas.* 47), which is the leading case upon this subject, declares that the innkeeper "shall not be charged, unless there be a default in him or his servants, in the well and safe keeping and custody of their guests goods and chattels within his common inn."

It appears also from that case, as well as numerous others, that there is not any strict rule which will confine a guest's recovery to ordinary baggage; but the innkeeper will be liable for any articles received in the inn with the traveler, whether money or goods, or for beasts or carriages, and to any extent. *Kent v. Shuckard*, 2 *B. & Ad.* 803; 2 *Kent's Com.* 592–3–4–5. And herein, therefore, he is liable beyond a passenger carrier.

There is a resemblance in some of their functions as well as in their liabilities. Both may board and lodge their guests, sometimes very conveniently, and sometimes very inconveniently. There has never been a time when a traveler could be expected to remain without sleeping accommodations at night through a voyage, and it would be expecting a great deal of him to suppose he could be very vigilant when asleep. It would certainly require more close watching to keep him from being robbed in an open cabin, than in a stateroom. The law can hardly, I think, be presumed to intend that a carrier may lawfully leave a passenger unprotected from manifest danger, and yet be responsible for any loss which he may trump up, when he has been put in comparative security. Nor does it seem to me entirely reasonable, to claim, as is done by plaintiff, that her clothing and other personal articles are in custody of the carrier, when the carrier is

McKee v. Owen.

locked out, and not in his custody when the passenger is out of her room. It seems to me there is no middle ground where liabilities can appear and vanish from time to time as the passenger goes hither or thither. / If these articles are baggage, the law declares the carrier liable at all events. If they are not, he has nothing to do with them./

/ The only ground on which the occupant of a state-room can maintain this peculiar liability, is, that the carrier has not merely become *quoad hoc*, like an innkeeper, but that he is an innkeeper in fact. There is certainly no authority for any such claim, nor, as it seems to me, is there any more reason. The occupations are essentially different. Boarding and lodging on a vessel are only necessary incidents to traveling on it./ To travel in comfort one must both eat and sleep. Such provision has been made ever since men have traveled, but it has never yet been held that a shipmaster was an innkeeper, because he did not starve his passengers, or make them sleep in crowds. ' If defendants are not liable as carriers, they are not liable at all. / And the declaration proceeds on this assumption.

There are some cases which have held that there was a liability for baggage, even where it has been kept in a passenger's private room. Upon this point the current of authority, both in England and America, seems to hold that it becomes in such cases a question of fact, whether the owner retained it under his personal supervision and control, or whether the carrier had also qualified possession. *Richards v. The London, Brighton & Southcoast Railway Co.* 7 C. B. 839. No such difficulty could arise concerning articles kept in the dress, or on the person.

Although the impossibility of protecting themselves against losses is no answer to an action, where the law requires impossibilities of carriers (as it sometimes does), yet it is a very strong argument against extending their

liabilities beyond the principles already established. And it needs but a small acquaintance with the usual circumstances of navigation, to become satisfied that, without police. powers which no civilized community would tolerate, carriers could very seldom prevent or redress any such depredations as are claimed to have occurred in the case before us.

The facts alleged, it is not proper to comment on, as the jury would be the proper tribunal to weigh the extraordinary matters narrated. But the fact that in these cases carriers must be at the mercy of travelers, who can not usually be contradicted as to the extent of their losses, and may therefore recover what they see fit to swear to, renders some caution necessary against opening the door unwarrantably.

I think the judgment below should be affirmed.

MARTIN Ch. J. concurred.

The court being thus equally divided, the judgment below was affirmed.