## Stephen Cutler and another v. Zoroaster Bonney and another.

*Innkeepers : Losses by fire : Negligence.* Innkeepers are held not liable for horses, wagons, etc., belonging to their guests, and destroyed by a fire not caused by their negligence, burning the hotel barn and its contents.

*Bailees: Innkeepers: Common carriers.* The liability of innkeepers as bailees, and that of common carriers, distinguished.

*Innkeepers: Guests: Negligence: Accidental casualties: Fires.* The general principle stated to be that innkeepers guarantee the good conduct of all persons whom they admit under their roof, provided their guests are themselves guilty of no negligence to forfeit the guaranty; and beyond this their liability does not extend to losses by purely accidental casualties, or from riots or acts of force from without; and accidental fires stand on quite as strong grounds of exemption as other mishaps.

*Submitted on briefs July 24. Decided October 7.*

Case made from Kent Circuit.

*Andrew T. McReynolds,* for plaintiffs.

*Norris, Blair & Kingsley,* for defendants.

CAMPBELL, J.

Plaintiffs brought suit to recover the value of certain horses, a wagon, and some goods destroyed by fire in the barn of defendants, who were innkeepers. It is found by the court that there was no fault or negligence in defendants or their servants, the fire which destroyed the barn

and its contents having been either accidental or incendiary, and taking from an alley or public way outside.    No question arises upon any thing except the obligation of innkeepers to respond to their guests for property thus destroyed without negligence.    It is admitted that the property was in the custody of defendants in that capacity.

It is unfortunate that upon this subject there is some confusion, arising from the loose *dicta* in which many courts have indulged, when dealing with cases involving the liability of innkeepers.    It is unsafe to give any force to such remarks beyond the analogies of the cases in which they are found.    Upon all questions not decided by recognized and accepted precedents, we can only rest upon the ancient maxims of the common law.

In order to hold a bailee liable for that which is in no respect to be imputed either to his own negligence, or to that of persons for whom he is responsible, there should be found clear authority.    The common law has declared this liability against one class of bailees, and has made common carriers responsible for all losses not caused by public enemies, or some casualty in no way arising out of human action.    It is claimed by plaintiffs that in this respect common carriers and innkeepers stand on precisely the same footing ; and it is not claimed that defendants can be made liable in the present case on any narrower ground.

There are many cases in which it has been said by judges that the liability is not distinguishable..    Most of these have been collected in the notes of *Mr. Holmes* to the last edition of *Kent's Commentaries.—2 Kent C., 596.* But, except in the decisions to be especially referred to hereafter, there is nothing in the facts of any authority which we have discovered, which called for any such remark, or which would justify the enforcement of a liability for such a loss as the present.

With one or two exceptions the cases referred to have arisen from thefts or unexplained losses of property, while

it was within the legal custody or protection of the inn-keeper. The rule actually applied in all of these cases has been that all such losses were presumably due to the neglect of the innkeeper. Generally, and perhaps universally, he has been held to an absolute responsibility for all thefts from within, or unexplained, whether committed by guests, servants, or strangers. But he has quite as uniformly been discharged by any negligence of the guest conducing to the injury, and he has not been held for acts done by the servants of guests, or by those whom they have admitted into their rooms. And in many cases he has been held discharged where the guest has exercised any special control over his property. The general principle seems to be that the innkeeper guarantees the good conduct of all persons whom he admits under his roof, provided his guests are themselves guilty of no negligence to forfeit the guaranty.

Beyond this, we have found no decided case anywhere. We have found no decision holding innkeepers liable for losses by purely accidental casualties, or from riots, or acts of force from without, such as have been from the beginning excepted by the text writers. These writers, or at least such of them as are of recognized authority, have drawn a line between carriers and innkeepers, resting on the distinction between absolute and qualified responsibility. And none of the accepted writers have found any authority for disregarding this distinction. The two classes of bailees have been kept carefully separate.

*Judge Story* makes this very clear in his *Treatise on Bailments*, § *472,* where he refers to authorities which we think sustain him. *Dawson v. Chamney, 5 Q. B., 164,* is directly in point, and the language of the older decisions there referred to excludes the extreme measure of liability. *Chancellor Kent* is equally explicit that the liability does not extend to robbery or inevitable casualty.—*2 Kent Com., 593.* The Roman law, to which both of them refer, included fire under this head. The French law excludes

liability for wrongs from without.—*Ferriere Dic.,* "*Auber-gistes;*" *Story Bailm.,* § *465.*

But all the modern authorities profess to take their departure from *Calye's case, 8 Co., 32.* That case declares that the original writ quoted in it, and found in *Fitz-herbert's N. B., 94 B.,* contains the whole ground of the common law. Analyzing the writ, the fourth heading is made to refer to the ground of liability as the default of the innkeeper, " by which it appears that the innholder shall not be charged, unless there be a default in him or his servants, in the well and safe keeping and custody of their guests, goods and chattels within his common inn." The language in *Fitzherbert* is " so that by the default of them, the innkeepers or their servants, no damage may come in any manner to their guests." Among the defenses given by *Saunders* is that " defendant may show that his house was broken open, and a forcible robbery of them committed by thieves."—*2 Saund. Pl. & E., 217.* And the liability of innkeepers for the acts of others is put by *Blackstone* on the ground that they were bound to prevent misconduct by those under their control.—*1 Bl., 430.* Accidental fire stands on quite as strong grounds' of exemption as other mishaps.

The common law has in some things been modified by decisions, but it is contrary to law to follow *dicta* made in cases calling for no departure from the old law. It would be a manifest innovation to create a liability where no possible default exists, and to sustain such an innovation, there ought to be both reason and authority. We can not object to follow settled law on our own views of what policy ought to make it. But we are not prepared to assume there is any policy which will compel persons who are in no wise in fault to respond in damages, where the law is not clear against them. And the authorities directly in point on losses by fire are not numerous, and do not, in our judgment, call for any such consequences.

The doctrine imposing such a liability may be said to

rest entirely on what was said by *Justice Porter* in *Hulett v. Swift, 33 N. Y., 571.* In that case the subject is discussed at some length, and with much ability. But no foundation is shown there for the doctrine asserted, beyond remarks which are confessedly opposed to the text books, and which were foreign to what was actually decided in the cases where they are found. The whole opinion of the learned judge is open to the same criticism; as he himself declares the point discussed did not really arise, inasmuch as no proof was introduced changing the presumption raised by law against the defendant. The opinion was not unanimous, and the dissent of *Judge Denio* would detract much from its force, even if it had been pertinent to the facts.

Opposed to this is the case of *Merritt v. Claghorn, 23 Vermont R., 177,* in which *Judge Redfield,* delivering the opinion of the court, reached the conclusion that where there was no negligence there was no responsibility for loss by fire. This opinion is an able one, and was not given beyond the facts. It has been both approved and criticised, but no occasion has heretofore arisen to consider its correctness upon similar facts. *Vance v. Throckmorton, 5 Bush. (Ky.), 42,* is to the same effect, but there, too, the decision might have rested on other grounds, and its authority is therefore diminished.

We regard the decision in Vermont as reasonable, and as within the fair meaning of the common-law rule. We think the circuit court was right in taking the same view.

The judgment must be affirmed, with costs.

The other Justices concurred.