## MARY LAFFREY v. STEPHEN B. GRUMMOND.

*Common carriers—Destruction of baggage by fire.*

Plaintiff sued defendant, as owner of a passenger steamer, for baggage destroyed by an *accidental* fire after its delivery in a warehouse at the place of its destination, while awaiting the arrival of the plaintiff on a later boat, she having stopped at an intermediate point by consent of the carrier; and the Court hold that in order to charge the defendant it must be held that his liability exceeds that of an innkeeper, and that a liability that did not exist while the baggage was in transit on board the steamer was created when the transit ceased, and the baggage was put into the warehouse, which seems to be unreasonable, and a judgment in favor of the plaintiff is reversed.

Error to Wayne. (Hosmer, J.) Argued February 6, 1889. Decided February 15, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Edwin F. Conely,* for appellant, contended:

1. In the light of the authorities, the following may be considered as the established rules of law concerning the delivery and acceptance of baggage:

   *a*—The carrier should deliver the baggage promptly from the car, vessel, or other vehicle, and keep the same at hand in a public place, without storing, so that the owner may conveniently and without delay, claim and take possession of it.

   *b*—The passenger should claim and take possession of his baggage within the time which the carrier could be reasonably expected to hold it for him in the place and manner above described.

   If, therefore, the owner fails to claim and take possession of his baggage within the time fixed by the rules of law, the relation of common carrier to the baggage ceases, and that of warehouseman takes its place. In the latter capacity the carrier is bound to store the baggage in a suitable place, but is liable for negligence only; citing Hutch. Carr. § 712, and cases cited in note 2; 2 Rorer, Railroads, 801.

2. In view of the foregoing, it is plain that if the plaintiff, in accordance with her original contract with the defendant, had continued her trip through to Detroit on board the "Flora," and on her arrival had requested or suffered the defendant to store her baggage in a warehouse or other proper place, or to take other suitable means for its safe-keeping, pending her call for it, the defendant would be responsible for its loss in case of negligence only; citing *Minor v. Railway Co.*, 19 Wis. 40; *Roth v. Railroad Co.*, 34 N. Y. 548; *Jones v. Transportation Co.*, 50 Barb. 193; *Klein v. Packet Co.*, 3 Daly, 390; *Railroad Co. v. Fairclough*, 52 Ill. 106; *Railroad Co. v. Addizoat*, 17 Ill. App. 632; *Railroad Co. v. Mahan*, 8 Bush, 184; *Hoeger v. Railway Co.*, 63 Wis. 100; *Ouimit v. Henshaw*, 35 Vt. 605; *Bansemer v. Railroad Co.*, 25 Ind. 435; *Matteson v. Railroad Co.*, 76 N. Y. 381; and defendant's position is supported by *Railroad Co. v. Boyce*, 73 Ill. 510.

*Stewart & Galloway*, for plaintiff, contended:

1. The liability of the carrier, *as a carrier*, does not cease on reaching the destination, but there must be a delivery or its equivalent; citing *Railroad Co. v. Ward*, 2 Mich. 538, 541; *Buckley v. Railway Co.*, 18 Id. 121; *Feige v. Railroad Co.*, 62 Id. 1.

2. The rule as to baggage is the same as to freight, except that where a party travels with his baggage he has actual knowledge of its arrival, and, being present at the depot or wharf, the law merely gives him a reasonable time to take it away, and no notice is necessary in such a case, but where the baggage which has been checked does not arrive as soon as the passenger, he is thereafter entitled to notice, the same as for freight; citing *Wilson v. Railway Co.*, 57 Me. 138; *Wilson v. Railroad Co.*, 21 Gratt. (Va.) 654; *Railroad Co. v. Addizoat*, 17 Ill. App. 632.

3. Just what a reasonable time is after arrival must depend upon the circumstances in each particular case, and where the facts are undisputed it is a question of law for the court; citing Hutch. Carr. § 376; 2 Rorer, Railroads, 992; 3 Wood, Railway Law, 1516; Ang. Carr. § 114.

4. As to when the liability of the carrier, as such, ceases, and that of a warehouseman arises, counsel cited *Dininny v. Railroad Co.*, 49 N. Y. 546; *Nevins v. Steam-boat Co.*, 4 Bosw. 225; *Curtis v. Railroad Co.*, 49 Barb. 148; *Roth v. Railroad Co.*, 34 N. Y. 548; *Powell v. Myers*, 26 Wend. 591; *Hollister v. Nowlen*, 19 Id. 234; *Cole v. Goodwin*, Id. 251.

5. Where the passenger, by consent of the carrier, stops at an

intermediate point, and his baggage proceeds, the liability of the carrier continues as such; citing *Roth v. Railroad Co.*, 84 N. Y. 548; Hutch. Carr. § 706.

CAMPBELL, J.   Plaintiff sued defendant as owner of a passenger steamer for baggage destroyed by fire on land in a warehouse.   The facts, as practically established, were these :   Plaintiff lives in Detroit, but was on July 29, 1887, at St. Ignace, in Mackinac county, and desired to return to Detroit, stopping at Alpena by the way. Defendant owned two boats, the Flora and the Atlantic, running from St. Ignace to Detroit, and continuously across Lake Erie,—the Flora to Toledo, and the Atlantic to Cleveland.   Both stopped in due course at Alpena and Detroit.   Plaintiff took passage on the Flora.   She told the clerk she wanted to stop at Alpena for a short time to get an abstract, and it would require a stay of half an hour.   She was told that the boat would stop about two hours, and she could take her ticket straight through to Detroit.   The steamer was behind time, and she was advised before reaching Alpena to take a stop-over check, and come down on the next steamer, as she could not probably wait long enough.   Plaintiff did so, and, after finishing her business, found the boat gone.   Before landing at Alpena, she asked the porter if she had better remove her baggage, and he told her if it was put off, and she returned in time, it would have to be put on again, and, if she did not return, it would be all right, and would be taken care of.   Her baggage had been checked through to Detroit.   On reaching Detroit the baggage was put in Ashley & Mitchell's warehouse, they being defendant's Detroit agents, and was burned without fault that night.   The Atlantic arrived, in due course, four days later.   The court below ruled that defendant was liable for the baggage absolutely, and not exempted by the fire.

There is some variance in the authorities concerning the circumstances which terminate a passenger carrier's liability, and they are not entirely harmonious in principle, and they are not uniform on different lines of carriage. The doctrine which holds passenger carriers liable for baggage has not always existed, and has grown up out of changes in methods of carriage. It has always differed somewhat, in regard to conditions of delivery, from the liability attaching to handling freight; and, while it is very generally and properly spoken of as a duty arising from the relation of common carriage, it is also treated by various writers as in many respects analogous to the duties of innkeepers. It is certainly quite similar to the duty of innkeepers in the case of passenger steamers on long trips, the main business of which is boarding and lodging passengers, the carriage of whose baggage is purely incidental.

The extent of a carrier's liability concerning a passenger's baggage was discussed by an equally divided Court in *McKee v. Owen*, 15 Mich. 115. In that case a steamboat owner was sued for property claimed to have been stolen from a state-room while the passenger was asleep. The court below gave judgment for defendant. The opinion of two judges for reversal placed the liability on the ground that the defendant was, as to the loss in question, in the position of an innkeeper. The opinion in favor of affirmance held he was not an innkeeper in fact, and that as passenger carrier he was not so broadly liable as an innkeeper, and only liable for articles placed in his custody. The case, therefore, decides nothing beyond the fact that the liability for baggage is not larger than that of an innkeeper, although in some respects analogous.

It was subsequently held by this Court that an innkeeper is not liable for loss by accidental fire. *Cutler v.*

*Bonney*, 30 Mich. 259. The acts of Congress do not hold a carrier by water liable for such a fire. *American Transportation Co. v. Moore*, 5 Mich. 368, affirmed by the Supreme Court of the United States in 24 How. 1. In order to hold defendant here, it must be held that his liability exceeds that of an innkeeper. It must also be held that a liability that did not exist while the baggage was in transit on board the steamer was created when the transit ceased, and the baggage was put into warehouse. This seems to be unreasonable.

When Mrs. Laffrey arranged as she did arrange to have her baggage forwarded, she had a right to expect it would not be neglected, and would be properly cared for; but she was also bound to expect that it would be dealt with in the usual way, and would be left in Detroit, and not kept on board the steamer, which had a further destination. She held the check for it, which prevented delivery to any one else, and she was to come down on another boat some days later. The baggage would necessarily be landed and cared for in a warehouse, which in this instance was not the warehouse of defendant, but was owned by other parties, who acted as local agents, as is usual for steam-boats. The baggage was subject to delivery on call and presentation of the check; but plaintiff expected delay, and that it must be some days, at least, before it would be called for, and must be stored meanwhile in some way.

The reasonable view seems to us to be that the warehousing at the termination of the transit was within the contemplation of both parties; and it also seems to us that it would be irrational to create a constructive relation of carriage, after the real carriage terminated, which should involve a larger responsibility than the actual carriage, and to hold defendant for a loss by fire in a warehouse which is not chargeable to a warehouse-

man as such, and would not have been chargeable to defendant if it happened on board. We can get no particular help from comparing precedents, but we think there is no rule which under our own decisions should create an exceptional liability against defendant.

The judgment should be reversed, with costs, and a new trial granted.

The other Justices concurred.